JUSTICE COTTER
delivered the Opinion of the Court.
¶1 Casey Kent, aged 35, died on June 14,2008, as the result of a head injury he suffered on June 2,2008, after falling while skateboarding in Cedar Pointe Estates in Columbia Falls, Montana. Sara Kent, Casey’s wife, sued the City of Columbia Falls and various other entities involved in designing, developing, and constructing Cedar Pointe Estates. She alleged multiple counts including negligence, premises liability, breach of professional duties, and wrongful death. Sara claims that a portion of the paved path upon which Casey was skating was built with a 24% grade and the steepness of this grade caused Casey’s fall and resultant fatal head injury. Sara ultimately settled with all defendants except the City of Columbia Falls. The Eleventh Judicial District Court for Flathead County granted the City’s motions for summary judgment. Sara appeals. We reverse and remand.
ISSUE
¶2 A restatement of the issue is whether the District Court properly applied the public duty doctrine to grant summary judgment to the City.
FACTUAL AND PROCEDURAL BACKGROUND
¶3 Development of a 20-acre plot of land in southeast Columbia Falls began in approximately 2003. Donald Gatzke owned the property and *192 hired John Schwarz with Schwarz Architecture & Engineering (later APEC Engineering) to design the infrastructure, draft and submit official and detailed plans to the City, and construct what became a 79-lot residential PUD development known as Cedar Pointe Estates. A PUD, a/k/a “planned unit development,” is a planned community that allows for varied and compatible land uses. This type of development gives local governments and developers greater flexibility in designing a proposed subdivision than would be allowed with a traditional subdivision. It authorizes a city to approve a project that might not otherwise conform to applicable zoning and subdivision regulations.
¶4 In the design documents submitted to the City for approval, Gatzke and Schwarz proposed features for Cedar Pointe that did not meet City standards. For example, they proposed installing narrow streets without sidewalks. Narrow streets that do not allow emergency vehicles to navigate a neighborhood if cars are parked on the streets do not meet the City’s standards for a residential development but can satisfy the requirements for a PUD if other accommodations are made. As an accommodation for narrow streets and the lack of sidewalks, Gatzke and Schwarz proposed construction of multiple small parking lots and a trail system that included both a bike and a walking path.
¶5 In October 2003, the City Council of Columbia Falls adopted Resolution No. 1316 in which it conditionally approved the preliminaiy plat submitted for Cedar Pointe.[1] Attached to the resolution were 28 conditions imposed by the City. Condition 12 stated: “In lieu of sidewalks throughout the development the applicant shall install a bicycle and pedestrian trail system as shown on Drawing C-3 prepared by Schwarz Engineering and dated 09-18-03 ...” with modifications. The City instructed that the trail system be widened and extended in specified locations. It also required the city manager to “approve of the design and location of the trails prior to the start of construction.”
¶6 In November 2003, the City Council approved Ordinance No. 647, an amendment to the development of the Cedar Pointe PUD. Attached to the ordinance was another set of conditions. Condition 9 provided that a non-motorized trail system (bike path) was to be constructed as part of the subdivision. It described where the bike path was to be located, the width of the bike path, and that the City would maintain all portions of the bike trail as it was located within the City’s right-of-way. Condition 10 instructed that a walking path would be built within *193 the subdivision and would provide direct access to every lot that did not share a property line with either the bike path or a public street. The location and width of the walking path was specified. Again, the City retained the right to “approve of the design and location of the trails prior to the start of construction.”
¶7 In July 2007, the City Council approved Ordinance No. 690which included additional amendments to Cedar Pointe. Attachments to Ordinance No. 690 required that the bike path be re-routed in places and that both the bike and the walking paths be paved. The Subdivision Improvement Agreement (SIA) attached to Ordinance No. 690 stated: “The City, in its sole and exclusive discretion, shall determine when and if all of the required conditions of the PUD, Plat or related documents have been met.” Attached to the SIA was a Final Plat Report requiring the developer to post a security bond of $471,867.75 to cover completion of the proposed work. Also attached was an APEC Inspector’s Daily Record of Work Progress dated March 8, 2007, indicating remaining items to be completed. One such item was “Bike path and walking paths will need to be completed with specified grades and surfacing materials.”
¶8 On July 31, 2007, a contractor on the Cedar Pointe construction project contacted APEC questioning the grade of the bike path and whether it met ADA (Americans with Disabilities Act) standards. APEC responded in writing that the bike path must be ADA-compliant but that the walking path need not be. The letter indicated that APEC had conferred with the city manager who stated the City had no expectation of ADA-compliance for the walking path. The Manager further advised that Gatzke should seek legal advice concerning whether an ADA-non-compliant sidewalk was acceptable from a liability standpoint. APEC opined that “it would be exceedingly challenging to meet ADA grade guidelines for the complete walk path system on the Cedar Pointe properly.”
¶9 Throughout construction of the trail system, City officials made numerous on-site visits and inspections. Additionally, at multiple times during construction the City notified engineers and contractors on the project that failure to comply with the City’s instructions could result in the City’s denial of approval or rejection of the project. On December 21, 2007, the City Director of Public Works indicated that the final inspection of all infrastructure items had been completed and approved, with the exception of a short list of remaining items not pertinent to the trail system, and that the original security bond should be released.
¶10 On June 2, 2008, Casey Kent was skateboarding within the *194 subdivision along the paved walking path. At the bottom of a 24% decline in the path, Casey fell off his board, hit his head, and lost consciousness. He was transported by ambulance and subsequently airlifted to a hospital where he died 12 days later of severe head trauma.
¶11 On June 1, 2011, Sara filed suit against the City of Columbia Falls, Gatzke, Schwarz, APEC, the Cedar Pointe Estates Homeowners’ Association, and various John Does. Among her complaints against all defendants, including the City, were allegations of negligence, willful or wanton misconduct, negligence per se, and wrongful death. She alleged claims of premises liability, nuisance, and attractive nuisance against the City, Gatzke, and the Homeowner’s Association. Lastly, she asserted a claim exclusively against the City for failure to follow its own regulations. Dining the first three years of litigation, Sara settled with all the defendants except the City of Columbia Falls.
¶12 In February 2012, early in the proceedings, the City moved for summary judgment on all counts against it. The City disputed premises liability» claiming that it did not own the property, did not construct the path, and expressly required the homeowner’s association to maintain the walking path. The City also argued that it did not assume any duty by virtue of its supervisory authority over and involvement in designing the walking path’s layout because the public duty doctrine precludes the existence of such a duty. Consequently, the City asserted, without a duty to be breached, Sara’s negligence and premises liability claims could not stand. Both Sara and APEC opposed the City’s motion. APEC filed a brief in opposition arguing that the “special relationship/detrimental reliance” exception to the public duty doctrine applied in this case; therefore, the City may be held liable.
¶13 Sara chose not to address the public duty doctrine in her brief in opposition, asserting that discussion of the doctrine, if necessary, should be reserved for a future date after all potential parties had been identified. Rather, she argued that applying the public duly doctrine was unnecessary because the City created a non-delegable legal duty for itself when it adopted resolutions and ordinances allowing the development and construction of the trail system for Cedar Pointe Estates to replace sidewalks throughout the subdivision, subject to explicit conditions. She claimed that by allowing Cedar Pointe Estates to utilize a trail system in lieu of sidewalks, the City retained the same responsibilities and liabilities for the trail system as it had for other City sidewalks. Sara observed that the general public using the trail system saw no distinction between the bike path and the walking path, nor did the City seek to establish such a distinction.
*195 ¶14 Sara also asserted that in addition to the statutory duty, the City voluntarily undertook oversight of the trail system based upon its self-imposed obligation to “approve” the trail system and its active participation in the design and location of the trail system. Relying on Dobrocke v. City of Columbia Falls, 2000 MT 179, ¶ 33, 300 Mont. 348, 8 P.3d 71, overruled in part on other grounds by Roberts v. Nickey, 2002 MT 37, 308 Mont. 335, 43 P.3d 263. Sara claimed the City’s duties required it “to act with reasonable care in the approval of the design and location of the trails ... .” She opined that the existence of these duties rendered application of the public duty doctrine unnecessary and incorrect.
¶15 The District Court conducted a hearing and on November 10, 2012, granted the City’s motion on multiple counts of the complaint, including premises liability. Upon entry of this order, Sara’s only claims against the City that remained extant were those alleging willful or wanton misconduct and wrongful death.
¶16 On December 21, 2012, this Court issued its decision in GatlinJohnson v. City of Miles City, 2012 MT 302, 367 Mont. 414, 291 P.3d 1129, in which we addressed the public duty doctrine as it pertains to public safety in a municipal park. A detailed discussion of GatlinJohnson is provided below.
¶17 In April 2013, Columbia Falls moved for summary judgment on the remaining counts. Sara both opposed the City’s motion and, in light of our decision in Gatlin-Johnson, filed a motion under M. R. Civ. P. 54(b) seeking reconsideration of the District Court’s earlier summary judgment rulings pertaining to her negligence claims and her claim that the City failed to follow its own regulations. On March 21,2014, the District Court granted the City’s motion for summary judgment. It also determined that Gatlin-Johnson was not dispositive and denied Sara’s motion for reconsideration.
¶18 Sara filed a timely appeal.
STANDARD OF REVIEW
¶19 This Court reviews a district court’s decision on a motion for summary judgment de novo, to determine whether it is correct, applying the same considerations as the district court under M. R. Civ. P. 56. Summary judgment is proper when the moving party shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Gatlin-Johnson, ¶ 10 (citations omitted).
¶20 The existence of duty is an issue of law, and this Court reviews a *196 decision on an issue of law to determine whether it is correct. GatlinJohnson, ¶ 11 (citations omitted).
DISCUSSION
¶21 Did the District Court properly apply the public duty doctrine to grant summary judgment to the City ?
¶22 As indicated by this issue statement, Sara’s appeal is narrow. Notably, we are not determining whether the City is liable to Sara nor are we determining whether the District Court’s discussion of the public duty doctrine and its exceptions is correct. Our focus here is whether the District Court should have applied the doctrine at all under the facts of this case and our ruling in Gatlin-Johnson.

Public Duty Doctrine

¶23 “The public duty doctrine provides that a governmental entity cannot be held liable for an individual plaintiffs injury resulting from a governmental officer’s breach of a duty owed to the general public rather than to the individual plaintiff.” Gatlin-Johnson, ¶ 14. Under the doctrine, “where a municipality owes a duty to the general public, that duty is not owed to any particular individual.” Prosser v. Kennedy Enters. Inc., 2008 MT 87, ¶ 18, 342 Mont. 209, 179 P.3d 1178. Such duties to the general public include law enforcement services and fire protection. “[A] law enforcement officer has no duty to protect a particular person absent a special relationship because the officer’s duty to protect and preserve the peace is owed to the public at large and not to individual members of the public.” Gonzales v. City of Bozeman, 2009 MT 277, ¶ 20, 352 Mont. 145, 217 P.3d 487. See also Coty v. Washoe Cty., 839 P.2d 97 (Nev. 1992X“[T]he duty to fight fires ‘runs to all citizens and is to protect the safety and well-being of the public at large.’ Therefore, the duty of fire and police departments ‘is one owed to the public, but not to individuals.’ ”). An exception to the public duty doctrine exists when a “special relationship” arises, “giving rise to [a] special duty that is more particular than the duty owed to the public at large.” Nelson v. Driscoll, 1999 MT 193, ¶ 22, 295 Mont. 363, 983 P.2d 972.
¶24 A special relationship generally can be established in one of the following four circumstances: (1) by a statute intended to protect a specific class of persons of which the plaintiff is a member from a particular type of harm; (2) when a government agent undertakes specific action to protect a person or property; (3) by governmental actions that reasonably induce detrimental reliance by a member of the public; and (4) under certain circumstances, when the agency has *197 actual custody of the plaintiff or of a third person who causes harm to the plaintiff. Nelson, ¶ 22. To establish a “special relationship” under the third exception, a plaintiff must show that: (1) there has been direct contact between the public official and the plaintiff; (2) the official has provided express assurances in response to the plaintiffs specific inquiry; and (3) the plaintiff justifiably relied on the representations of the official. Prosser, ¶ 36.

District Court Arguments

¶25 Sara argued to the District Court that the City had assumed two distinct and specific duties, both of which were firmly grounded in “generally applicable principles of law,” and neither of which were owed to the public at large: (1) the City took upon itself through its ordinances a non-delegable statutory duty to approve the design and construction of the Cedar Pointe Estates’ trail system, which includes both the bike path and the walking path; and (2) the City voluntarily undertook — through its active role in deciding and monitoring the location and layout of the trail system — the duty to “act” with reasonable care in approving the walking path because its participation in the planning and building process went beyond simple approval. Sara asserted that a duty of reasonable care attached to both the statutory and voluntary obligations, and that breach of these duties was sufficient to support her tort claim against the City.
¶26 Before eventually settling with Sara, APEC had argued in opposition to the City’s motion for summary judgment that the City’s substantial participation in the design and completion of all facets of the Cedar Pointe Estates, includingthe walkingpath, created a special relationship with Casey that “reasonably induced” Casey’s reliance, to his detriment, that the walking path was designed and constructed in the same safe manner as the bike path and other sidewalks throughout the City. Thus, it was APEC — and hot Safa — that raised the public duty doctrine in opposition to the City’s motion for summary judgment.

District Court’s Rulings

¶27 The focus of Sara’s appeal is the District Court’s initial application of the public duty doctrine in its November 2012 order (Order I), and its subsequent March 2014 order following publication of GatlinJohnson, in which it refused to reconsider application of the doctrine (Order II).
¶28 In Order I, the court made the following relevant findings:
(1) The City approved construction of a private subdivision containing an interconnected trail system consisting of a bike path and a walking path.
(2) In approving the subdivision, the City mandated that “[t]he *198 City shall approve of the design and location of the trails [in the trail system] prior to the start of construction.
(3) Correspondence between City employees and the developer suggests “that the City’s involvement went beyond mere approval; rather, the City appears to have taken an active role in deciding the location and layout of the trail system.”
The City did not challenge these findings through cross-appeal.
¶29 The District Court noted that several of Sara’s claims sounded in both negligence and premises liability. For example, three of her claims alleged that the City (1) negligently designed, built, and operated the walking path; (2) breached its duty to keep the walking path safe for travel; and (3) failed to warn of a defective or dangerous condition on the walking path. The court concluded that disposition of the case first required a determination of whether the City owed a legal duty to Sara.
¶30 The court determined that the City had no duty under premises liability because the City did not own or maintain the property upon which Casey was injured.[2] Moreover, the court concluded that the cases imposing “adjacent landowner” premises liability did not apply to the City in this case. Sara does not appeal the court’s ruling pertaining to premises liability.
¶31 Turning to Sara’s claims and the City’s public duty doctrine argument, the court observed that Sara had presented no argument on the merits of the City’s public duty doctrine claim. The court, therefore, limited its analysis of the public duty doctrine to APEC’s argument that the “special relationship/detrimental reliance” exception to the doctrine existed in this case. Relying on Prosser, the District Court concluded that the exception to the public duty doctrine did not apply because an element of this exception required direct contact between Casey and a City official and there was no such contact. The court did not address Sara’s claims that the City breached both a statutory and a voluntary duty, independent of the public duty doctrina
¶32 In Order II, the District Court specifically acknowledged Sara’s claim that the City-adopted ordinances created a statutory duty for the City but the court characterized (he argument as an argument that the “statutory” exception of the public duty doctrine applied. Therefore, the *199 court again applied the doctrine and determined that the ordinance was not the type of statute that created a “specific class of [protected] persons.” The District Court stated that the City of Hamilton ordinances in Prosser and the City ordinances in the instant case were both passed to promote general health and welfare and therefore did not create a duty to an individual. Consequently, the court concluded that Sara’s claim of negligence failed.
¶33 Addressing Sara’s claim of a voluntarily-acquired duty and her application of Gatlin-Johnson, the court determined that GatlinJohnson was a distinguishable premises liability case and not applicable to Sara’s claims. The court noted that it had addressed premises liability in Order I and would not revisit it. Choosing to analyze Gatlin-Johnson no further, the court concluded its analysis with the assertion that “the decision in Gatlin held that the public duty doctrine does apply to land use decisions by local government” (Emphasis in original.)
¶34 The District Court misstates the holding in Gatlin-Johnson. In Gatlin-Johnson, we held that summary judgment granted to the City was error because the court did not allow the plaintiff to present her case at trial. However, in preface to our analysis in that case, we acknowledged numerous public duty doctrine cases that have been decided in our Court over the past decade. We included Prosser in this list, acknowledging that we applied the public duty doctrine in Prosser “to land use decisions by a local government body.” However, by deciding Prosser as we did, we did not intend to hold that all future “land use decisions by a local government” would be analyzed exclusively under the public duty doctrine, regardless of the level of participation by the municipality in the design and development of the given project.

Sara's Claims On Appeal

¶35 Sara argues on appeal that the District Court erred in refusing to reconsider application of the public duty doctrine in light of our clarification in Gatlin-Johnson that “The public duty doctrine was not intended to apply in every case to the exclusion of any other duty a public entity may have.... It does not apply where the government’s duty is defined by other generally applicable principles of law.” GatlinJohnson, ¶ 17. Sara maintains that there was no need for the court to invoke the public duty doctrine because the City had both a statutory duty and a duty based upon a voluntary undertaking to protect the public using the trail system in Cedar Pointe, and that breach of these duties was sufficient to support her tort claims. Gatlin-Johnson, ¶ 19. *200 She argues that the District Court erred when it presumptively applied the doctrine and its special exceptions without first assessing whether the City’s statutes and voluntary control were sufficient to support her tort claims.

The City’s Response

¶36 The City responds that the District Court’s Order I correctly analyzed whether the City owed a specific duty to Casey and concluded it did not. The City argues that Sara’s claims of a statutory and voluntary duty are actually assertions that the first and second exceptions of the public duty doctrine apply and therefore the District Court correctly analyzed the case under the public duty doctrine.

Gatlin-Johnson

¶37 In Gatlin-Johnson, an eight-year-old girl was severely iiyured when she fell from a slide in a Miles City-owned playground and hit her head on the ground. The child’s mother sued Miles City alleging that the City was negligent for failing to maintain sufficient “impact-absorbing material” around and beneath the slide. Gatlin-Johnson claimed that both the slide manufacturer and the Consumer Product Safety Commission required that there be 12 inches of impact-absorbing material under the slide. Gatlin-Johnson, ¶ 6. The District Court concluded that the City had a duty to safely maintain the playground area in the park, but that this duty was “owed to the general public at large” and was not a duty owed specifically to GatlinJohnson’s daughter. The court, applying the public duty doctrine, observed: “[w]here a tort claim is made against a public body, such as a municipality, the public duty doctrine bars recovery unless a duty is created by a ‘special relationship.’ ” The district court concluded no special relationship exceptions applied. Gatlin-Johnson, ¶ 7. The district court granted summary judgment to Miles City holding that the City owed no duty to Gatlin-Johnson’s daughter and that absent such a duty the City was not liable.
¶38 On appeal, this Court acknowledged numerous cases in which we recognized the applicability of the public duty doctrine, and discussed the “special relationship” exception that can render the doctrine inapplicable. Gatlin-Johnson, ¶¶ 15-16. We then addressed the district court’s reliance on language contained in previous cases that “it is necessary” for district courts “to consider the public duty doctrine whenever there is a negligence claim against a public entity or person.” Gatlin-Johnson, ¶ 17. Without expressly stating that the subject language was being misinterpreted, we explained:
Consideration of the public duty doctrine does not mean... that it always applies whenever a public entity or person is a defendant *201 in a negligence case. The public duty doctrine was not intended to apply in every case to the exclusion of any other duty a public entity may have. It applies only if the public entity truly has a duty owed only to the public at large, such as a duty to provide law enforcement services or regulate the practice of medicine. It does not apply where the government’s duty is defined by other generally applicable principles of law.
Gatlin-Johnson, ¶ 17. We then discussed multiple cases in which we have applied the duty of care in premises liability cases to governmental defendants without relying upon the public duty doctrine. Gatlin-Johnson, ¶ 18. We observed that it was “clear that in each [summarized] case there was no need to invoke the public duty doctrine because the governmental entity had a specific duty, such as premises liability, that was sufficient to support a tort claim.” We observed that this method of addressing government liability was consistent with the Montana Tort Claims Act, which holds every governmental entity in Montana subject to liability for its torts. We referenced the definition of “claim” in the context of governmental tort liability “as arising from an act or omission ‘under circumstances where the governmental entity, if a private person, would be liable to the claimant for the damages under the laws of the state.’ ” GatlinJohnson, ¶ 19; § 2-9-101(1), MCA.
¶39 We concluded in Gatlin-Johnson that the district court erred in applyingthe public duty doctrine simply because amunicipality was the defendant and the park was open to the public. Gatlin-Johnson, ¶ 20. Consequently, we reversed and remanded the case to the district court for further proceedings. Gatlin-Johnson is not “new” law; rather, it is a reminder that courts should first determine whether a governmental defendant has a specific duty to a plaintiff arising from “generally applicable principles of law” that would support a tort claim. If a private person would be liable to the plaintiff for the acts that were committed by the government, then the governmental entity would similarly be liable. Where such a specific duty and breach exists, the public duly doctrine has no application.

Prosser

¶40 As noted above, the District Court relied on Prosser in its analysis in both Orders I and II. In Prosser, defendant Kennedy purchased a former fast food restaurant and submitted plan documents to the City of Hamilton proposing modification of the property for commercial use as a casino and lounge. Following a hearing, at which two of the plaintiffs attended and raised concerns, the Hamilton City Zoning *202 Board of Adjustment adopted the plan by resolution and subsequently issued a permanent certificate of occupancy. Prosser, ¶¶ 5-6. The casino promptly became a nuisance with noise, fights, drug use, and garbage. Three neighbors living in a residential area adjacent to the casino sued Kennedy and the City alleging that the City owed them a special duty, i.e., had a “special relationship” with them, because ordinances approved for construction and operation of the casino and the ordinances being violated (noise, drugs, etc.,) had been adopted to protect them specifically as neighbors. They alleged the Board of Adjustment violated various ordinances in approving Kennedy’s plan, and that various City officials had failed to abate the nuisance despite plaintiffs’ requests. Prosser, ¶¶ 7-8. The district court, analyzing the case under the public duty doctrine, granted summary judgment to the City and we affirmed. Prosser, ¶ 9.
¶41 The District Court’s reliance in Order I on Prosser is understandable considering Gatlin-Johnson had not yet been issued and the District Court believed it was appropriately applying the public duty doctrine and that an analysis of the “special relationship/detrimental reliance” as argued by APEC, was required. However, the District Court again relied on Prosser in Order II when it declined to reconsider its analysis after Gatlin-Johnson was issued. We conclude this was error.
¶42 While we acknowledge some similarities between the case before us and Prosser, there is a significant distinction between Prosser and the case at bar — that is, no one in Prosser argued that the public duty doctrine did not apply. The plaintiffs in Prosser asserted throughout the proceedings that the special relationship exception applied. The Prosser Court therefore decided the case on the issues that were before if. In the case before us, Sara expressly argued that the City had duties defined under other generally applicable principles of law that rendered application of the public duty doctrine erroneous.
¶43 Additionally, in Prosser, while the city officials processed Kennedy’s paperwork, approved of her remodeling/re-commercializing plan, and later fielded irate phone calls from the plaintiffs, it does not appear that the city was actively involved in the design of the project, which was in essence a remodel of a restaurant. It did not voluntarily undertake oversight of the construction, nor did it actively participate in the design and location of the remodeled building.
¶44 Conversely, in the case before us, the record reflects that the City reviewed numerous plans and drawings for Cedar Pointe over time. It imposed multiple conditions upon the developers, including the *203 requirement that a bicycle and pedestrian trail system be constructed. It obligated the city manager to approve the design, location, and final construction of the trails. In executing these tasks, city officials made numerous site visits and ultimately instructed that the trail system be widened and extended in specified locations. The City conducted inspections of the trail system during and after the construction phase. As the District Court found — and the City does not contest via cross-appeal — “the City’s involvement went beyond mere approval” of the project and in fact “the City appears to have taken an active role in deciding the location and layout of the trail system.” (Opinion, ¶ 28.) Many of the City’s actions were similar to those that would be typically undertaken by the architects, contractors, and engineers. Consequently, this case does not involve a uniquely governmental activity.
¶45 Additionally, the City did not distinguish for the public what was a bike path and what was a walking path. The paths were created by the same contractor and looked identical. Even the police officer who responded to Casey’s accident wrote in his report that Casey was found on the south side of the “bike path.” The record also reflects that numerous City officials walked the path, some on multiple occasions,[3] and knew first-hand of the existence of a dangerous and ADA-non-compliant grade in a public walking path. Nonetheless, it “approved” the walking path without requiring that the path meet Code requirements.
¶46 During the discovery phase of this case, Kent asked the City to identify the standards and regulations the City relied upon while “reviewing, considering, [and] placing conditions upon and giving approval for the design of the path and trail system.” The City responded that it relied upon Title 17 of the City Code and the City’s adopted Standards for Public Works improvements. Columbia Falls Municipal Code 17.14.030 disallows subdivided land with “slopes equal to or greater than twenty-five percent subsidence,” recognizing that building on such a slope could cause environmental degradation or “be detrimental to the health, safety or general welfare of existing or future residents.” Moreover, the Standards for Public Works improvements Section 2.05 (E) required: “Bicycle Paths and/or *204 Walkways: Access-ways for people to use with non-motorized vehicles, primarily for recreational use, the minimum width shall be 9 feet, all slopes and grades shall meet ADA requirements.” It is apparent however that the City did not require the owner, the contractors, or engineers to redesign the City-required public walking path to conform to ADA grade standards.
¶47 In arguing the District Court’s ruling should be affirmed, the Dissent discusses, among other cases, a recent Utah Supreme Court case, Cope v. Utah Valley State College, 342 P.3d 243 (UT 2014). In Cope, a dance student was injured while rehearsing a choreographed dance routine that required her dance partner to lift her to his shoulder as she completed a back flip. Cope, ¶ 4. Although the move proved to be a challenging one, the school did not provide the usual spotters to help protect the dancers as they learned a new lift. In fact, the instructor told the students to use “more power” and tiy again. He told the couple he would drop the lift from the routine if they were unable to perform it. In their third attempt, Cope’s partner lost his footing, and Cope fell and was injured. Cope, ¶ 5. She sued the college which moved for summaiy judgment on the grounds that it owed no duty to protect her. The motion was granted and Cope appealed. Cope, ¶¶ 7-8.
¶48 The Utah Supreme Court conducted an in-depth analysis of whether the dance instructor’s action was an “affirmative action” or an “omission.” The court noted that if Cope’s accident arose from an “affirmative action” taken by the college, the public duty doctrine would not apply to her claim. However, if her claim arose from an omission, the public duty doctrine may present a bar to liability. Cope, ¶ 34. The court concluded that Cope could “trace her harm back to an affirmative act by UVSC”; therefore, the public duty doctrine did not bar her claim. Cope, ¶ 39. The Utah court explained that the college created, funded, and supervised the dance team, and gave students course credit for team participation. The court stated: “UVSC’s actions in creating and overseeing the ballroom dance team had advanced to a stage where it had a duly to act in a reasonable maimer to prevent injuries cause by participation with the dance team.” In other words, “the college "launched a force or instrument of [potential] harm’ ” and assumed a duly to act reasonably. Cope, ¶ 36.
¶49 The Dissent distinguishes this case from Cope, concluding that Sara ""has done nothing to show that the City created the dangerous grade on the walk path.” To the contrary, as was the case in Cope, Sara’s claim is premised upon affirmative actions taken by the City. As *205 the District Court found, the City did not merely approve the walkway; it took an active role in monitoring, determining, and approving the engineering aspects of the trail system. It walked the walkway and gave instruction on the design. Having undertaken this active role, the City assumed a duty to act reasonably. Cope, ¶ 36.
¶50 The City argues it had no duty to Sara. However, it has long been the rule in Montana that should one gratuitously assume to render a service, the entity so doingis “bound to the exercise of reasonable care in the performance of the services so voluntarily assumed.” Vesel v. Jardine Mining Co., 110 Mont. 82, 92, 100 P.2d 75,80 (1939). See also Nelson, ¶ 37 (“[0]ne who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all... . The rule has been applied in several Montana cases where this Court has imposed a duty of reasonable care in the performance of an undertaking”). Thus, as Sara has alleged, the jury could find the violation of a duty voluntarily assumed.
¶51 In Verity v. Danti, 585 A.2d 65 (R.I. 1991), the Rhode Island Supreme Court was asked whether the public duty doctrine applied to a case where a child was seriously injured as a result of a blocked sidewalk. While walking along a sidewalk the child encountered a large tree that blocked her passage. A stone wall abutted the tree on one side and her only way around the tree was to step off the sidewalk and onto a busy highway. In doing so, she was hit by a vehicle and seriously injured. The State claimed it was protected by the public duty doctrine but the Rhode Island Supreme Court disagreed. The court concluded that the State knew of the sidewalk obstruction and consciously decided not to remove the obstacle, thereby forcing pedestrians into peril. In fact, the court noted that the State had evaluated the condition of the sidewalk with the obstacle and concluded that it was “satisfactory.” The Rhode Island court called the State’s decision “egregious” and held “when the state has knowledge that it has created a circumstance that forces an individual into a position of peril and subsequently chooses not to remedy the situation, the public duty doctrine does not shield the state from liability.”
¶52 The same result is compelled here. Evidence sufficient to defeat summary judgment exists that the City was actively involved in the design of the path, knew of its dangerous grade, had the statutory authority to compel a modification, and yet exercised its statutory and contractual authority to approve it. We conclude that the City could be held liable to Sara should Sara establish her claims premised on violation of statutory duty and/or the voluntary assumption of a duty to act with ordinary care. We therefore conclude that the District Court *206 erred in barring Sara’s claims on the basis of the public duty doctrine.
CONCLUSION
¶53 Having concluded that the District Court erred in applying the public duty doctrine to the case at bar, we reverse the District Court’s entry of summary judgment for the City and remand for a trial on the merits.
CHIEF JUSTICE McGRATH, JUSTICES SHEA and WHEAT concur.

 Early documents refer to the subdivision as Cedar Park Subdivision. The name was changed after November 2004.

 Premises liability may be imposed on a property owner who breaches the duty to use ordinary care in maintaining the premises in a reasonable safe condition and to warn others of hidden or lurking dangers. Richardson v. Corvallis Pub. Sch. Dist. No. 1, 286 Mont. 309, 321, 950 P.2d 748, 755 (1997).

 It appears that William Shaw, the city manager, was on site at least five times during the pre-construction and construction phases of the project and that Lorin Lowry, the Director of Public Works, visited the site frequently and delivered site-related information to Shaw.