Justice James Jeremiah Shea delivered the Opinion of the Court.
***497 ¶1 Appellants Gerald and Patricia Renenger (collectively "Renengers") appeal the October 26, 2015 and June 9, 2017 Orders of the First Judicial District Court, Lewis and Clark County, granting the State's Motion to Dismiss and Jefferson County's Motion for Summary Judgment. We address the following issues:
Issue One: Whether the District Court erred in dismissing the Renengers' complaint on the grounds that the Jefferson County Attorney and the State were entitled to absolute prosecutorial immunity.
Issue Two: Whether the District Court erred in granting summary judgment to Jefferson County on the grounds that the public duty doctrine applied.
¶2 We affirm.
PROCEDURAL AND FACTUAL BACKGROUND
¶3 On October 6, 2012, the Jefferson County Sheriff's Office (JCSO) received a report from the father of J.S., an eleven-year-old boy. J.S.'s father reported that A.R., age ten, had performed oral sex on J.S. without consent. The case was assigned to a JCSO deputy, who filed an incident report. The JCSO deputy did not conduct a forensic interview but did forward the report to the Jefferson County Attorney's Office. Jefferson County *563 appointed a special deputy prosecutor, Steven Shapiro, to evaluate whether to file a delinquency petition. After reviewing the incident report, Shapiro concluded the report established probable cause to believe that A.R. committed the crime of sexual intercourse without consent, in violation of § 45-5-503, MCA. Shapiro signed an Affidavit, attached to his Motion for Leave to File Petition, attesting to this. The District Court determined there was sufficient probable cause and granted the Motion. Jefferson County brought delinquency proceedings against A.R., and A.R. was arraigned. A forensic interview of J.S. was conducted, and it was determined that the allegations against A.R. were greatly exaggerated. The delinquency proceedings against A.R. were then dismissed.
¶4 On March 30, 2015, the Renengers, A.R.'s parents, filed an amended complaint against Shapiro, the State,[1] and Jefferson County, which included an action pursuant to 42 U.S.C. § 1983 seeking damages based on an alleged violation of A.R.'s constitutional right to be free from unreasonable searches and seizures and a restriction of ***498 A.R.'s liberty without due process; a Dorwart claim[2] ; and a malicious prosecution claim. The Renengers alleged that Shapiro signed the probable cause Affidavit with reckless disregard for whether the allegations contained within the Affidavit were false. The State and Shapiro moved to dismiss on grounds of absolute prosecutorial immunity. On October 26, 2015, the District Court granted the Motion to Dismiss. The Renengers also filed a negligence claim against Jefferson County, alleging the County had a duty to avoid affirmative acts that would foreseeably cause harm. Jefferson County moved for summary judgment on the grounds that the public duty doctrine barred the Renengers' claims. On June 9, 2017, the District Court granted Jefferson County's Summary Judgment Motion. The Renengers appeal.
STANDARDS OF REVIEW
¶5 We review de novo a district court's ruling on a motion to dismiss pursuant to M. R. Civ. P. 12(b)(6). Plouffe v. State , 2003 MT 62, ¶ 8, 314 Mont. 413, 66 P.3d 316 ; Martin v. Artis , 2012 MT 249, ¶ 8, 366 Mont. 513, 290 P.3d 687. We review a district court's conclusions of law for correctness. McKinnon v. W. Sugar Coop. Corp. , 2010 MT 24, ¶ 12, 355 Mont. 120, 225 P.3d 1221 (citing Jones v. Mont. Univ. Sys. , 2007 MT 82, ¶ 15, 337 Mont. 1, 155 P.3d 1247 ). A district court's determination that a complaint failed to state a claim presents a conclusion of law. McKinnon , ¶ 12. This Court will construe the complaint in the light most favorable to the non-moving party, McKinnon , ¶ 12, and will take as true all allegations of fact therein, Plouffe , ¶ 8. This Court will affirm a dismissal if we conclude the non-moving party would not be entitled to relief based on any set of facts that could be proven to support the claim. McKinnon , ¶ 12 ; Plouffe , ¶ 8.
¶6 We review a district court's summary judgment ruling de novo. McClue v. Safeco Ins. Co. , 2015 MT 222, ¶ 8, 380 Mont. 204, 354 P.3d 604 ; Wendell v. State Farm. Mut. Auto. Ins. Co. , 1999 MT 17, ¶ 9, 293 Mont. 140, 974 P.2d 623. Summary judgment is appropriate only when no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Wendell , ¶ 9 ;
***499 M. R. Civ. P. 56(c)(3). The evidence, as well as all justifiable inferences drawn from it, must be viewed in a light most favorable to the non-moving party. Svaldi v. Anaconda-Deer Lodge County , 2005 MT 17, ¶ 12, 325 Mont. 365, 106 P.3d 548. Once the moving party has met its burden of establishing an absence of genuine issues of material fact and entitlement to judgment as a matter of law, the non-moving party must present material and substantial evidence, rather *564 than mere conclusory or speculative statements. Smith v. Burlington N. & Santa Fe Ry. , 2008 MT 225, ¶ 10, 344 Mont. 278, 187 P.3d 639 (quoting Hiebert v. Cascade County , 2002 MT 233, ¶ 21, 311 Mont. 471, 56 P.3d 848 ).
DISCUSSION
¶7 Issue One: Whether the District Court erred in dismissing the Renengers' complaint on the grounds that the Jefferson County Attorney and the State were entitled to absolute prosecutorial immunity.
¶8 42 U.S.C. § 1983 provides citizens a cause of action when state actors violate a federally protected constitutional right. Section 1983 must "be read against the background of [common law] tort liability ...." Monroe v. Pape , 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961), overruled on other grounds by Monell v. Dep't of Soc. Servs. , 436 U.S. 658, 663, 98 S.Ct. 2018, 2022, 56 L.Ed.2d 611 (1978). Any immunities established at common law are viable defenses in a § 1983 action. Pierson v. Ray , 386 U.S. 547, 554-55, 87 S.Ct. 1213, 1217-18, 18 L.Ed.2d 288 (1967).
¶9 Prosecutorial immunity is an established immunity against civil liability. Imbler v. Pachtman , 424 U.S. 409, 422, 427, 96 S.Ct. 984, 991, 993, 47 L.Ed.2d 128 (1976) ; Ronek v. Gallatin County , 227 Mont. 514, 516, 740 P.2d 1115, 1116 (1987) (the abolition of sovereign immunity under the Montana Constitution, Article II, Section 18, did not eliminate the defense of prosecutorial immunity). Prosecutorial immunity extends to the State of Montana, State ex rel. Dep't of Justice v. Dist. Court , 172 Mont. 88, 92-93, 560 P.2d 1328, 1330 (1976), and to Montana counties as well, Ronek , 227 Mont. at 516-17, 740 P.2d at 1116-17.
¶10 To determine whether a prosecutor, or county attorney, is entitled to immunity, courts look to the "nature of the function performed." Kalina v. Fletcher , 522 U.S. 118, 127, 118 S.Ct. 502, 508, 139 L.Ed.2d 471 (1997) (quoting Forrester v. White , 484 U.S. 219, 229, 108 S.Ct. 538, 545, 98 L.Ed.2d 555 (1988) ); Rosenthal v. County of Madison , 2007 MT 277, ¶¶ 27, 29-30, 339 Mont. 419, 170 P.3d 493. A criminal prosecutor is "absolutely immune from civil liability" when performing the traditional functions of an advocate, "regardless of negligence or lack of probable cause."
***500 Rosenthal , ¶¶ 29-30 (citing Imbler , 424 U.S. at 423-24, 96 S.Ct. at 991-92 ); Buckley v. Fitzsimmons , 509 U.S. 259, 273, 113 S.Ct. 2606, 2615-16, 125 L.Ed.2d 209 (1993).
¶11 A county attorney's initial determination of whether to file or maintain criminal charges against a suspect, a county attorney's selection of particular facts to include in a petition, and a county attorney's determination that the evidence is sufficiently strong to justify a probable-cause finding are all traditional prosecutorial functions protected by absolute immunity. Helena Parents Comm'n v. Lewis & Clark Cnty. Comm'rs , 277 Mont. 367, 375, 922 P.2d 1140, 1145 (1996) ; Kalina , 522 U.S. at 129-30, 118 S.Ct. at 509-30 ; Imbler , 424 U.S. at 430-31, 96 S.Ct. at 995-96 ; Rosenthal , ¶¶ 29-30 ; Buckley , 509 U.S. at 272-73, 113 S.Ct. at 2615 (prosecutorial immunity extends to "acts undertaken by a [county attorney] in preparing of the initiation of judicial proceedings," including evaluating evidence assembled by law enforcement); State v. McWilliams , 2008 MT 59, ¶ 29, 341 Mont. 517, 178 P.3d 121. Attesting to the truth or falsity of factual statements underlying a prosecutorial determination of probable cause, however, is the function of a witness. Kalina , 522 U.S. at 130, 118 S.Ct. at 510.
¶12 In Kalina v. Fletcher , the U.S. Supreme Court held that a state prosecutor was not entitled to prosecutorial immunity in a § 1983 action when she acted outside the scope of her duties by personally vouching for the truth of the facts set forth in an affidavit attached to an information charging a man with burglary.[3]
*565 Kalina , 522 U.S. at 121-22, 129-30, 118 S.Ct. at 505, 509-10. The Supreme Court held that by vouching for the truth of the matters stated in the affidavit, the prosecutor placed herself in the position of a complaining witness, rather than an advocate. Kalina , 522 U.S. at 129-31, 118 S.Ct. at 509-10. The Supreme Court reiterated that, but for the fact that the prosecutor essentially swore to the veracity of the information stated in the affidavit, she would have performed an acceptable advocacy role. Kalina , 522 U.S. at 130-31, 118 S.Ct. at 509-10. The Supreme Court also emphasized that under Washington law, a prosecutor need not swear to the truth of the facts in the certification; that was a function ***501 "any competent witness might have performed." Kalina 522 U.S. at 129-30, 118 S.Ct. at 509.
¶13 In Fratzke v. Sanders County , a federal district court applied Kalina and further distinguished the difference between swearing to the truth of the underlying facts and swearing to a belief in probable cause:
[The prosecutor] did not offer the probable cause evidence in the motion based on personal knowledge, but based upon information provided to her by others, which she is entitled to do. She did not act as a complaining witness, but instead performed a function which the Kalina Court noted would continue to receive absolute immunity protection-she received, selected, and presented externally-gathered information which she believed provided probable cause to charge the [defendants]. As this falls squarely within the judicial phase of the criminal process ... [the prosecutor] enjoys absolutely prosecutorial immunity from the ... § 1983 claim.
Fratzke v. Sanders County, 2015 WL 4964200 at *4, *5-6, 2015 U.S. Dist. LEXIS 109736, at *10, *14-15 (D. Mont. Aug. 19, 2015) (internal citations omitted). Because the prosecutor's motion for leave to file the information against the defendant did not "contain the sort of personal vouching found in the certification in Kalina ," the prosecutor was not stripped of absolute immunity. Fratzke, 2015 WL 4964200 at *4, *5-6, 2015 U.S. Dist. LEXIS 109736, at *10, *13-15 ; see also Vainio v. State , 2014 Mont. Dist. LEXIS 19, *9-10.
¶14 To initiate a delinquency proceeding via petition in a youth court proceeding:
(1) The county attorney may apply to the youth court for permission to file a petition charging a youth to be a delinquent youth or a youth in need of intervention. The application must be supported by evidence that the youth court may require. If it appears there is probable cause to believe that the allegations of the petition are true, the youth court shall grant leave to file the petition.
Section 41-5-1401, MCA.[4] A petition initiating proceedings must be ***502 signed by the county attorney and must set forth with specificity: "(a) the facts necessary to invoke the jurisdiction of the court together with a statement alleging the youth to be a delinquent youth or a youth in need of intervention; [and] (b) the charge of an offense ...." Section 41-5-1402, MCA.
¶15 "A showing of a mere probability that a defendant committed the offense *566 charged is sufficient to establish probable cause to file an information. ... The District Judge is to use common sense to determine whether probable cause exists." State v. Holt , 2006 MT 151, ¶ 28, 332 Mont. 426, 139 P.3d 819 ; State v. Arrington , 260 Mont. 1, 6, 8, 858 P.2d 343, 346, 347 (1993) (holding that even absent the use of a defendant's statements as evidence to support probable cause, there was sufficient evidence for a district court to grant leave to file an information pursuant to § 46-11-201, MCA ); see also State v. Hamilton , 185 Mont. 522, 530-32, 605 P.2d 1121, 1126-27 (1980). "It is not required that information in the affidavit supporting a charge, which might later be found inadmissible at trial, be excised before a determination of probable cause is made." Holt , ¶ 29 ; State v. Elliott , 2002 MT 26, ¶ 26, 308 Mont. 227, 43 P.3d 279 (reiterating that an affidavit need not make out a prima facie case that a defendant committed an offense).
¶16 In this case, the District Court distinguished the present case from Kalina , reasoning: "Shapiro was not vouching for the truth of the information set forth in the affidavit but attesting to the fact that, in his judgment, the information constituted probable cause." The District Court concluded Shapiro performed the function of an advocate and was therefore entitled to absolute prosecutorial immunity.
¶17 The Renengers argue the District Court erred in concluding that prosecutorial immunity applied when Shapiro signed the probable cause Affidavit. The Renengers argue the District Court ignored the arrest warrant oath and affirmation requirement: probable cause to file a criminal charge must be established by a complaining witness attesting to the underlying facts, and because Shapiro acted as that ***503 complaining witness when he filed his Affidavit, he was not entitled to immunity. The Renengers further argue that Montana law does not require a prosecutor, or county attorney, to sign an affidavit attesting probable cause. Instead, as in Kalina , any competent witness may attest to the facts.
¶18 Shapiro responds that Kalina is distinguishable from the present case because Shapiro did not act as a complaining witness by personally attesting to the truth of the facts alleged in his Affidavit. Instead, Shapiro acted in his role as advocate and attested to his belief in sufficient probable cause to file a delinquency petition against A.R. Accordingly, Shapiro argues he is shielded from any liability by prosecutorial immunity.[5] We agree.
¶19 Shapiro's Affidavit attached to his Motion for Leave to File Petition stated, in relevant part:
2. Affiant has reviewed reports submitted by the Jefferson County Sheriff's Office and has spoken with the Youth Probation Officer for this Court. These reports pertain to the events hereinafter described, and on the basis of the same, Affiant makes the allegations hereinafter set forth.
...
8. Given the foregoing, the undersigned has reason to believe that the youth A.R. has engaged in activity that if committed by an adult would constitute the offense of sexual intercourse without consent, a felony, in violation of [§] 45-5-503, MCA.
¶20 A review of the actual language of Shapiro's Affidavit and the statutory framework under which he filed it demonstrates Shapiro was not functioning as a complaining witness, but as a county attorney initiating delinquency proceedings. See § 41-5-1401, MCA ; Kalina , 522 U.S. at 128-30, 118 S.Ct. at 509. The Renengers misread Kalina as divesting a county attorney of absolute immunity whenever he signs a probable cause affidavit. Kalina instead holds that an attorney loses the protection of absolute immunity when he or she functions as a complaining witness. See Kalina , 522 U.S. at 130-31, 118 S.Ct. at 510. As required by Title 41, chapter 5, MCA, Shapiro moved for leave to file a petition with an attached affidavit attesting that "the undersigned has reason to believe the youth A.R. has engaged in activity ... in violation of [§] 45-5-503, MCA."
*567 Shapiro concluded, based on the report from JCSO deputies, there was a probability that A.R.
***504 committed the offense and determined that sufficiently established probable cause to file a petition. See Holt , ¶¶ 28-29 ; Woods , 203 Mont. at 405, 662 P.2d at 581. Ultimately, the District Court agreed, and permitted the delinquency petition to be filed against A.R.
¶21 The District Court properly evaluated the purpose and contents of Shapiro's Affidavit to determine whether, in signing it, he functioned as a witness or as an advocate. See Kalina , 522 U.S. at 128-29, 131, 118 S.Ct. at 509, 510. Unlike the prosecutor in Kalina , Shapiro did not attest to the veracity of the underlying information presented in the affidavit. See Kalina , 522 U.S. at 121-22, 130, 118 S.Ct. at 505, 510. Instead, like the prosecutor in Fratzke , Shapiro attested to his belief that, based upon the externally gathered information provided to him, probable cause existed to initiate delinquency proceedings against A.R. See Fratzke, 2015 WL 4964200, at *4, *5-6, 2015 U.S. Dist. LEXIS 109736, at *10, *13-15. This distinction is dispositive.
¶22 Shapiro was entitled to absolute prosecutorial immunity in the preparation of the charging documents and in the signing of the Affidavit of probable cause, regardless of whether some portion of the incident report upon which he relied was deficient or inaccurate. See Rosenthal , ¶¶ 29-30. The District Court correctly concluded that Shapiro and his employer, the State, were entitled to absolute prosecutorial immunity.
¶23 Issue Two: Whether the District Court erred in granting summary judgment to Jefferson County on the grounds that the public duty doctrine applied.
¶24 The public duty doctrine, a rule of common law negligence, provides that a law-enforcement officer does not owe a legal duty to an individual plaintiff where the plaintiff alleges he suffered harm from the officer's breach of the general duty to protect and preserve the peace.[6] Nelson , ¶ 21 ; see also ***505 Kent v. City of Columbia Falls , 2015 MT 139, ¶ 23, 379 Mont. 190, 350 P.3d 9 ; Gatlin-Johnson ex rel. Gatlin v. City of Miles City , 2012 MT 302, ¶ 14, 367 Mont. 414, 291 P.3d 1129 ; Massee v. Thompson , 2004 MT 121, ¶ 41, 321 Mont. 210, 90 P.3d 394 ("a governmental entity cannot be held liable for an individual plaintiff's injury resulting from a governmental officer's breach of a duty owed to the general public rather than to the individual plaintiff. ...").
¶25 The public duty doctrine "serves the important purpose of preventing excessive court intervention into the governmental process by protecting the exercise of law enforcement discretion." Nelson , ¶ 21 (internal citations omitted). The public duty doctrine is also intended to protect governmental entities "from liability for failure to adequately enforce general laws and regulations, which were intended to benefit the community as a whole." Gatlin-Johnson , ¶ 14 (quoting E. McQuillin, The Law of Municipal Corporations , § 53.04.25 at 195-97 (3d ed. 2003)). However, the public duty doctrine "was not intended to apply in every case to the exclusion of any other duty a public entity [or official] may have." Bassett v. Lamantia , 2018 MT 119, ¶ 19, 391 Mont. 309, 417 P.3d 299 (quoting Gatlin-Johnson , ¶ 17 ). The duty to behave as a reasonably prudent person does not simply disappear when an officer dons his or her uniform. See Bassett , ¶¶ 22-24, 30 ; § 28-1-201, MCA ("[e]very person is bound ... to abstain from injuring the person or property of another ...."). As we have previously held, law enforcement personnel *568 may be held liable in certain circumstances, even if they were acting in the scope of their official capacity. See Bassett , ¶¶ 22-23 ; Nelson , ¶ 22.
¶26 In Kent v. City of Columbia Falls , we distinguished a claim of negligence based on an affirmative act by a government entity or person (the public duty doctrine does not necessarily apply) from a claim of negligence based on a failure to protect or preserve the peace (the public duty doctrine applies). Kent , ¶¶ 47-50. More recently, in Bassett v. Lamantia , we further clarified that the public duty doctrine "is inapplicable in the rare and limited factual situations ... where the alleged duty breached is not one of a general duty to protect and preserve the peace," but where a plaintiff claims that he was injured directly by an officer's affirmative acts. Bassett , ¶¶ 22, 30-31 (holding the public duty doctrine was inapplicable where a plaintiff alleged a police officer's act of tackling him while pursuing a fleeing suspect caused the plaintiff injury).
***506 ¶27 In its Order granting Jefferson County's Motion for Summary Judgment, the District Court held the public duty doctrine applied to bar the Renengers' claims. Finding no duty owed, the District Court did not address the merits of the Renengers' argument.
¶28 The Renengers argue the District Court erred in granting summary judgment to Jefferson County. The Renengers argue their case involves an affirmative act by a public official that harmed A.R. and rendered the public duty doctrine inapplicable. Specifically, they contend that JCSO personnel negligently forwarded A.R.'s case on to the County Attorney's Office to initiate proceedings before adequately investigating J.S.'s father's allegations.
¶29 Jefferson County counters that JCSO personnel's act of sending its case file to Shapiro is not an act which negates application of the public duty doctrine. Moreover, the act which the Renengers allege caused them damages was the actual filing of the delinquency petition by Shapiro on behalf of the State. Shapiro was not obligated to file the petition upon receipt of the JCSO's file. Thus, Jefferson County did not take an affirmative act against the Renengers that rendered the public duty doctrine inapplicable. We agree.
¶30 Although public officials can be held liable for negligence committed on the job, any act of alleged negligence must be analyzed within the context of the official's job and daily duties. See Bassett , ¶¶ 18, 22-23, 28. The process of investigating and passing along evidence to a prosecutor, or county attorney, is a regular function JCSO personnel do as part of their mandate to protect and secure the general public welfare. See Nelson , ¶ 21 ; Gatlin-Johnson , ¶ 14. The choice to pass along the incident report detailing allegations against A.R. is exactly the type of discretionary decision to which the public duty doctrine was intended to apply. See Nelson , ¶ 21.
¶31 Further, the heart of the Renengers' argument is that JCSO failed to do the proper due diligence prior to passing along the incident report to the County Attorney's Office. JCSO personnel failed to conduct a forensic interview and failed to delve a little deeper into the legitimacy of the allegations against A.R. The failure to conduct a forensic interview, though not required by statute or regulation, is not an affirmative act, but rather an omission. The Renengers' proposed expansion of what constitutes an affirmative act by law enforcement would render the public duty doctrine meaningless, as any person charged with a crime would necessarily be harmed when evidence was passed along to county attorneys and charges were filed. Additionally, as JCSO points out, Shapiro was not obligated to file a petition initiating proceedings against A.R. based on the JCSO report, and the ***507 District Court was not obligated to conclude there was sufficient probable cause in Shapiro's Affidavit to proceed with filing a delinquency petition against A.R. Numerous intervening procedural steps and decisions by multiple governmental entities occurred between JCSO's initial investigation to the initiation of delinquency proceedings.
¶32 Even if JCSO's action of forwarding the report on for further investigation was not an action precluded from liability by the *569 public duty doctrine, there is no evidence to suggest JCSO personnel behaved in a negligent manner. JCSO personnel did not conduct a forensic interview prior to sending the report to the County Attorney's Office. However, as previously discussed, JCSO was under no statutory or regulatory obligation to do so.[7] This Court has affirmed numerous cases prosecuted to verdict based only on a victim or other complaining witness's statement. See e.g., State v. Gilpin , 232 Mont. 56, 61-62, 70, 756 P.2d 445, 447-48, 453 (1988) (holding sex offense cases, including child victim cases, in Montana do not require corroboration of sex offense victim's testimony and affirming a defendant's conviction for two counts of sexual assault where the only evidence was the victim's testimony); see also State v. Taylor , 2010 MT 94, ¶¶ 27, 30, 356 Mont. 167, 231 P.3d 79 (declining to apply the plain error doctrine and affirming a judgment and sentence for sexual intercourse without consent and misdemeanor sexual assault when the sole evidence was uncorroborated victim testimony); State v. Duncan , 2008 MT 148, ¶¶ 18, 43-45, 48, 56, 343 Mont. 220, 183 P.3d 111 (upholding a conviction for sexual assault and rape where the juvenile victims' testimonies were the only evidence and disagreeing that the State's accidental destruction of physical evidence-which would not have exonerated the defendant-violated the defendant's due process); State v. Rennaker , 2007 MT 10, ¶¶ 16-18, 26-27, 335 Mont. 274, 150 P.3d 960 (affirming a conviction of two counts of incest based on victim's uncorroborated and disputed testimony). Thus, the Renengers' contention that the acceptance of J.S.'s father's account by a JCSO deputy was blatantly negligent and insufficient to initiate an investigation and the filing of a delinquency petition is unavailing.
¶33 The forwarding of the report by JCSO personnel to the County ***508 Attorney's Office was not an affirmative act, but a decision that fell under JCSO's discretion in fulfilling its general duty to protect and preserve the peace. Accordingly, the actions of JCSO personnel are precluded from liability under the public duty doctrine.
CONCLUSION
¶34 The District Court correctly concluded Shapiro was entitled to absolute prosecutorial immunity when he signed the Affidavit establishing probable cause to file the petition initiating delinquency proceedings against A.R. The District Court properly extended this immunity to both Jefferson County and the State. Further, the District Court correctly concluded the public duty doctrine prevented recovery against JCSO and properly granted summary judgment to Jefferson County.
¶35 Affirmed.
We Concur:
MIKE McGRATH, C.J.
DIRK M. SANDEFUR, J.
LAURIE McKINNON, J.
BETH BAKER, J.
JIM RICE, J.
INGRID GUSTAFSON, J.

The State represents Shapiro for acts he performed in the underlying youth court matter in his prosecutorial capacity.

A local governmental entity may be held liable under § 1983 when it is shown the entity itself caused the constitutional violation at issue through implementation of a policy or custom of that governmental entity. Dorwart v. Caraway , 1998 MT 191, ¶¶ 19, 115, 290 Mont. 196, 966 P.2d 1121, overruled in part on other grounds by Trs. of Ind. Univ. v. Buxbaum , 2003 MT 97, ¶¶ 29-31, 46, 315 Mont. 210, 69 P.3d 663.

Under Washington Rules of Criminal Procedure, an information must be accompanied by either an affidavit, called a "Certification for Determination of Probable Cause," or "sworn testimony establishing the grounds for issuing a warrant." Kalina , 522 U.S. at 121, 121 n.1, 118 S.Ct. at 505, 505 n.1 (citing Wash. Super. Ct. Crim. R. 2.2(a) : Warrant of Arrest; Wash. Rev. Code. Ann. § 9A.72.085 (1994)).

Both parties refer to the following statute as applicable to the underlying proceedings involving A.R.:
To initiate criminal charges via an information:
(1) The prosecutor may apply directly to the district court for permission to file an information against a named defendant. If the defendant named is a district court judge, the prosecutor shall apply directly to the supreme court for leave to file the information.
(2) An application must be by affidavit supported by evidence that the judge or chief justice may require. If it appears that there is probable cause to believe that an offense has been committed by the defendant, the judge or chief justice shall grant leave to file the information, otherwise the application is denied.
Section 46-11-201, MCA. This reference does not change the Court's probable cause analysis. See State v. Woods , 203 Mont. 401, 405, 662 P.2d 579, 581 (1983) (analyzing an arrest warrant in the context of the Youth Court Statute and reiterating the requirement that such warrants must be based on probable cause and supported by an oath or affirmation as required by the United States and Montana Constitutions).

Jefferson County adopts and incorporates Shapiro and the State's arguments regarding prosecutorial immunity.

There are exceptions to the public duty doctrine where a special relationship exists between a government officer or entity and the injured plaintiff. Nelson , v. Driscoll , 1999 MT 193, ¶ 22, 295 Mont. 363, 983 P.2d 972 ; Gonzales v. City of Bozeman , 2009 MT 277, ¶ 20, 352 Mont. 145, 217 P.3d 487. Neither party alleges a special relationship exists in this case. As the District Court concluded:
The record is devoid of evidence of circumstances necessary to establish a special relationship between JCSO and [the] Renengers. There is no evidence that a statute which was intended to protect a specific class of persons which includes [the] Renengers was violated. There is no allegation that any County agent undertook a specific action to protect [the] Renengers or their property. There is no allegation that [the] Renengers relied on any representation by [JCSO]. There is no evidence that a third-party in the custody of [JCSO] caused harm to [the] Renengers.

The Renengers cite no authority for the proposition that law enforcement is required to conduct a forensic interview prior to initiating delinquency proceedings against a minor, other than the proposition that forensic interviews are best practice in cases involving juvenile victims.