# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AKEBO ABAGNININ; AMANGOUA
ABLI; MIESSAN ETIENNE ABLI; ABA
ABOU; YAPO PIERRE ABOUA; KOFFI
ANTOINE ABRI; AMPOH ADAMA;
TOURE ABRY; HARUNA
ABUBAKARAY; KROYA ACA;
SIMPLICE ACHIEPO,
          *Plaintiffs-Appellants,*

          v.

AMVAC CHEMICAL CORPORATION;
DOW CHEMICAL COMPANY; SHELL
OIL COMPANY; DOLE FOOD
COMPANY, INC.; DOLE FRESH FRUIT
CO; STANDARD FRUIT CO.;
STANDARD FRUIT AND STEAMSHIP
COMPANY,
          *Defendants-Appellees.*

No. 07-56326

D.C. No.
CV-06-06157-GW

OPINION

Appeal from the United States District Court
for the Central District of California
George H. Wu, District Judge, Presiding

Argued and Submitted
July 18, 2008—Pasadena, California

Filed September 24, 2008

Before: Cynthia Holcomb Hall and Pamela Ann Rymer,
Circuit Judges, and Stephen M. McNamee,* District Judge.

*The Honorable Stephen M. McNamee, Senior United States District
Judge for the District of Arizona, sitting by designation.

13521

Opinion by Judge McNamee

## COUNSEL

Raphael Metzger, Metzger Law Group, Long Beach, California, for the plaintiffs-appellants.

Edwin V. Woodsome, Jr., Orrick, Herrington & Sutcliffe, Los Angeles, California, for defendant-appellee The Dow Chemical Company; Lawrence P. Riff, Steptoe & Johnson, Los Angeles, California, for defendant-appellee Shell Oil Company; Robert G. Crow, Boornazian, Jensen & Garthe, Oakland, California, for defendant-appellee AMVAC Chemical Corporation; Frederick L. McKnight, Jones Day, Los Angeles, California, for defendants-appellees Dole Food Company, et al.

## OPINION

MCNAMEE, District Judge:

Akebo Abagninin and others who live and work in the Ivory Coast ("Abagninin")[1] appeal the district court's dismissal with prejudice of their claims against manufacturers, distributors, and users of the pesticide DBCP for genocide and crimes against humanity under the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350.[2] Abagninin alleges that DBCP

---

[1]Plaintiffs-Appellants are collectively referred to as "Abagninin." The parties against whom he proceeds are collectively referred to as "AMVAC" unless context otherwise requires.

[2]On the same day, Abagninin filed seven actions against the same parties in state court seeking relief under state law for negligence, breach of warranty, and various other product liability theories.

caused male sterility and low sperm counts, which AMVAC knew. The district court granted with prejudice AMVAC's motion for judgment on the pleadings as to the genocide claim for failure to allege that AMVAC acted with specific intent. Abagninin's claim for crimes against humanity was subsequently dismissed for failure to allege that AMVAC's conduct occurred within the context of a State or organizational policy. We affirm.

## I.   FACTS AND PROCEEDINGS BELOW

Abagninin is a West African foreign national who has resided and worked on banana and pineapple plantations in the Ivory Coast villages of Kakoukro and Ono. AMVAC is a private business entity that designed, manufactured, or required the use of the agricultural pesticide 1,2 Dibromo-3-Chloropropane ("DBCP"). Abagninin alleges that DBCP exposure caused male sterility and abnormally low sperm counts, and resulted in the prevention of births.

Abagninin alleges that AMVAC knew of DBCP's toxicity as early as the 1950s, and that by the fall of 1977 the use of DBCP was suspended in the United States. Abagninin further alleges that despite knowing the negative health effects of DBCP, AMVAC continued manufacturing, selling, and using DBCP on the Ivory Coast plantations. Dole Food Company, Inc., through its subsidiary Standard Fruit Company, allegedly entered into partnership agreements with an Ivory Coast governmental entity known as "Société d'Etat pour le Développement de la Production des Fruitières et Légumes" ("Sodefel"). Sodefel allegedly owned and operated the fruit plantations. Under the alleged partnership agreements, Dole Food would purchase all fruit produced by the plantations, and Sodefel would grow the fruit according to Dole Food's specifications. These specifications allegedly included the use of DBCP produced by Dow Chemical Company, Shell Oil Company, or AMVAC Chemical Corporation.

Abagninin contends that the partnership agreements and resulting use of DBCP caused sterility and low sperm counts in plantation workers, as a result of which they cannot procreate. Abagninin further contends that such conduct supports claims under the ATS for genocide and crimes against humanity because the conduct was undertaken with knowledge of DBCP's effects and pursuant to a State or organizational policy. The original complaint alleged genocide, crimes against humanity, racial discrimination, and unlawful distribution of pesticides in violation of the laws of nations. Dow Chemical moved for judgment on the pleadings under Rule 12(c), and AMVAC joined this motion.

On March 23, 2007, the district court dismissed with prejudice Abagninin's claims for genocide and unlawful distribution of pesticides. The district court found that Abagninin failed to allege a violation of applicable norms of international law regarding genocide and unlawful distribution of pesticides. Specifically, the district court held that genocide requires specific intent to destroy a particular group of victims, and that Abagninin only alleged that AMVAC acted with knowledge of the consequences of DBCP. In so holding, the district court rejected Abagninin's argument that the Rome Statute of the International Criminal Court ("Rome Statute") lowered the intent requirement for genocide to include knowledge.[3] The district court also dismissed the remaining claims, including the claim predicated on crimes against humanity. The district court held that these claims required an element of State action, and granted leave to amend to include allegations of State action.

Abagninin filed the First Amended Complaint ("FAC") on April 6, 2007, alleging claims under the ATS for crimes against humanity and racial discrimination. Dow Chemical filed a motion to dismiss under Rule 12(b)(6) which AMVAC

---

[3]Abagninin appeals the decision as to the genocide claim; dismissal of the claim for unlawful distribution of pesticides is not before us.

joined. The district court found that the FAC failed to sufficiently allege a State or organizational policy regarding sterilization. Supplemental briefing was requested as to whether dismissal should be with prejudice or without prejudice, and whether to allow discovery regarding the State action requirement. The district court also indicated that defendants not yet served or appearing would be treated no differently than AMVAC as to lack of State action. All counsel present, including Abagninin's counsel, waived notice as to the dismissal of non-served defendants.

The district court then held a hearing as to the nature of dismissal and proffered discovery. Abagninin's proffered discovery would only reveal whether or not the Ivory Coast government was aware of the use and consequences of DBCP. The district court determined that such information, indicating knowledge by the Ivory Coast, would not constitute State action. The district court therefore dismissed the remaining claims with prejudice, finding that Abagninin's proffered discovery would not establish conduct within the definition of State action. Abagninin timely appealed.

## II.  STANDARD OF REVIEW

A dismissal for failure to state a claim is reviewed de novo. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005) (Rule 12(b)(6)); *Dunlap v. Credit Protection Ass'n, L.P.*, 419 F.3d 1011, 1012 n.1 (9th Cir. 2005) (Rule 12(c)).  All factual allegations in the complaint are accepted as true, and the pleadings construed in the light most favorable to the nonmoving party. *Knievel*, 393 F.3d at 1072. Denial of leave to amend is reviewed for abuse of discretion. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990). The district court's decision will not be disturbed absent a definite and firm conviction that it committed a clear error of judgment. *Id.*

## III.  DISCUSSION

The ATS allows aliens to bring tort claims for violations of the law of nations or treaties of the United States. We will

first discuss the scope of the ATS before addressing the dismissal of Abagninin's claims for genocide and crimes against humanity.

The ATS reads in its entirety: "The district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. A "treaty of the United States" is a formal agreement between the United States and one or more other sovereigns, entered into by the President and approved by two-thirds of the Senate. U.S. Const. art. II, § 2, cl. 2; *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 118 (2d Cir. 2008) (noting 1925 Geneva Protocol did not constitute "a treaty of the United States" under the ATS until ratified).

**[1]** The Supreme Court recently considered the ATS in *Sosa v. Alvarez-Machain*, and made clear that any claim based on the law of nations must "rest on a norm of international character accepted by the civilized world and defined with a specificity comparable to the features of the 18th-century paradigms" of piracy, infringement on the rights of ambassadors, and violation of safe conducts. 542 U.S. 692, 725, 732 (2004).[4] Although jurisdiction under the ATS is not limited solely to these paradigms, it is "subject to vigilant doorkeeping," *id.* at 729, as courts have "no congressional mandate to seek out and define new and debatable violations of the law of nations." *Id.* at 728. *Sosa* also instructs that "the determination whether a norm is sufficiently definite to support a cause of action should (and, indeed, inevitably must) involve an element of judgment about the practical conse-

---

[4]This limitation on judicial recognition of private claims under federal common law for violations of an international law norm is consistent with our previous reasoning that "[a]ctionable violations of international law must be of a norm that is specific, universal, and obligatory." *Sosa*, 542 U.S. at 732 (citing and quoting *In re Estate of Marcos Human Rights Litigation*, 25 F.3d 1467, 1475 (9th Cir. 1994)).

quences of making that cause available to litigants in the federal courts." *Id.* at 733.

With these definitions and principles in mind, we turn to the genocide and crimes against humanity claims dismissed by the district court. As discussed below, Abagninin's allegations fail to state a claim for either cause of action under prevailing norms of international law. We are not empowered, as Abagninin would urge, to extend and redefine these norms.

## A.   Genocide

**[2]** The common law distinguished between crimes requiring "general intent" and those requiring "specific intent." *United States v. Bailey*, 444 U.S. 394, 403 (1980). The district court dismissed the genocide claim because Abagninin failed to allege that AMVAC acted with specific intent, and denied leave to amend because the defect could not be cured. Relying on the Rome Statute, Abagninin contends that the original complaint sufficiently alleged genocidal intent—knowledge— defined as awareness that a consequence will occur in the ordinary course of events. However, the knowledge intent standard is not part of a treaty of the United States or part of the law of nations. No treaty of the United States, no controlling act of the President or Congress, and no judicial decision indicates that genocide is a knowledge-based norm. Nor is there a sufficient consensus that it is a violation of international law to be aware that genocide will occur in the ordinary course of events. We therefore affirm.

### 1.   Treaty of the United States

**[3]** A treaty not ratified by the United States at the time of the alleged events cannot form a basis for an ATS claim. *Vietnam Ass'n*, 517 F.3d at 118; *Flores v. S. Peru Copper Corp.*, 414 F.3d 233, 256 (2d Cir. 2003) ("A state only becomes bound by—that is, becomes a party to—a treaty when it ratifies the treaty." (citing *Haver v. Yaker*, 76 U.S. (9 Wall.) 32,

35 (1869)); *cf. Hawkins v. Comparet-Cassani*, 33 F. Supp. 2d 1244, 1257 (C.D. Cal. 1999) (noting that treaty to which the United States is a signatory, but has not yet ratified, is not binding on the United States), *rev'd in part on other grounds by* 251 F.3d 1230 (9th Cir. 2001). It is undisputed that the United States has neither signed nor ratified the Rome Statute. Int'l Criminal Court, Assembly of States Parties, The States Parties to the Rome Statute, *available at* http://www.icc-cpi.int/asp/statesparties.html (last visited Aug. 11, 2008); *see also* Letter from John R. Bolton, U.S. Under Secretary of State for Arms Control and International Security, to Kofi Annan, U.N. Secretary General (May 6, 2002), *available at* http://www.state.gov/r/pa/prs/ps/2002/9968.htm (stating that the United States does not intend to become a party to the Rome Statute). Despite the lack of formal constitutional ratification, Abagninin contends that the Rome Statute is nonetheless "self-executing." This contention is without merit. *See Medellin v. Texas*, ___ U.S. ___, 128 S. Ct. 1346, 1356 n.2 (2008) ("What we mean by 'self-executing' is that the treaty has automatic domestic effect as federal law *upon ratification*") (emphasis added). In order to state a claim based on the ATS, Abagninin must therefore demonstrate that the law of nations includes the Rome Statute's intent standard. 28 U.S.C. § 1350.

### 2.   Law of Nations

**[4]** The law of nations is synonymous with "customary international law," *Flores*, 414 F.3d at 237 n.2, 247, and violations of international law must contravene a norm that is specific, universal, and obligatory. *Sosa*, 542 U.S. at 732. Abagninin confuses the issue by asserting a broader proposition—that the fact that 139 countries signed, and 105 countries ratified, the Rome Statute demonstrates that its standards reflect a universal obligatory norm. The issue here, however, is narrower: whether the Rome Statute's definition reflects the kind of definiteness and acceptance among civi-

lized nations that existed for *Sosa*'s historical paradigms. The district court correctly held that it does not.

**[5]** The Convention on the Prevention and Punishment of the Crime of Genocide ("Genocide Convention") defines genocide as a specific intent crime. The Convention on the Prevention and Punishment of the Crime of Genocide art. 2, Dec. 9, 1948, 78 U.N.T.S. 277 ("In the present Convention, genocide means any of the following acts committed with intent to destroy, in whole or in part, a national, ethnical, racial or religious group, as such."). As recently as 2004, the Genocide Convention was recognized as the main source of customary international law regarding genocide. *Prosecutor v. Brdanin*, Case No. IT-99-36-T, Judgment, ¶ 680 (Sept. 1, 2004).

**[6]** Decisions from international tribunals also reflect the specific intent requirement for genocide. The International Criminal Tribunal for Rwanda's ("ICTR") definition of genocide was taken verbatim from the Genocide Convention. *Prosecutor v. Akayesu*, Case No. ICTR-96-4-T, Judgment, ¶ 494 (Sept. 2, 1998). Thus the ICTR defined genocide as a crime of specific intent. *Id.* at ¶ 498 ("[T]he [specific] intent in the crime of genocide lies in 'the intent to destroy, in whole or in part, a national, ethnical, racial, or religious group, as such.' "). The International Criminal Tribunal for Yugoslavia ("ICTY") also adopted the element of specific intent for the crime of genocide. *E.g.*, *Prosecutor v. Krstic*, Case No. IT-98-33-A, Judgment, ¶ 37 (Apr. 19, 2004) ("These requirements —the demanding proof of specific intent and the showing that the group was targeted for destruction in its entirety or in substantial part—guard against a danger that convictions for this crime will be imposed lightly."); *Prosecutor v. Brdanin*, Case No. IT-99-36-T, Judgment, ¶ 695 (Sept. 1, 2004) ("It is this specific intent that characterises the crime of genocide."). No decision from either tribunal supports Abagninin's contention that genocide requires mere knowledge, or general intent.

**[7]** Abagninin asserts that his position is supported by the *Zyklon B* cases, *Trial of Bruno Tesch and Two Others*, 1 Tr. War Crim. 93 (1947). Defendants in the *Zyklon B* cases were accused of being accessories before the fact to war crimes committed mainly at Auschwitz. *Id.* at 103. The prosecution was based on Article 46 of the Hague Convention of 1907, concerning the Laws and Customs of War on Land. *Id.* The defendants were charged with supplying poison gas "used for the extermination of allied nationals interned in concentration camps well knowing that the said gas was to be so used." *Id.* at 93. Abagninin's reliance on these cases is misplaced, however, for the defendants there were prosecuted for war crimes that were not specific intent offenses.

**[8]** Domestic materials similarly reject a definition of genocide based on mere knowledge. The federal Genocide Convention Implementation Act of 1987 ("Implementation Act") largely adopted the Genocide Convention language, and explicitly defined genocide as requiring "the specific intent to destroy, in whole or in substantial part, a national, ethnic, racial or religious group as such." 18 U.S.C. § 1091(a). This language follows the wording of the "specific intent understanding" that the Senate included in the resolution of ratification to the Genocide Convention in order to distinguish between acts committed with the purpose of destroying a group and all other acts. S. Rep. No. 100-133, at 8 (1988), *as reprinted in* 1988 U.S.C.C.A.N. 4156, 4161-62. Standing alone, this understanding would raise concerns regarding Abagninin's proposed intent standard, as "it is highly unlikely that a purported principle of customary international law in direct conflict with the recognized practices and customs of the United States . . . could be deemed to qualify as a *bona fide* customary international law principle." *United States v. Yousef*, 327 F.3d 56, 92 n.25 (2d Cir. 2003). However, the Implementation Act is in line with, rather than opposed to, the recognized principle of international law that requires specific intent for the crime of genocide. 18 U.S.C. § 1901(a).

**[9]** The Second Circuit has recognized that dismissal of a genocide claim is appropriate when the complaint fails to allege facts sufficient to show specific intent. *In re Agent Orange Prod. Liability Litig.*, 373 F. Supp. 2d 7, 115 (E.D.N.Y. 2005), *aff'd*, 517 F.3d 104 (2d Cir. 2008). In *Agent Orange*, Vietnamese nationals brought genocide claims for harms allegedly resulting from the United States' use of Agent Orange and other herbicides during the Vietnam War. 373 F. Supp. 2d at 15. The court dismissed the genocide claims, finding that the herbicides were not used "with the specific intent to destroy any group." *Id.* at 115. Therefore the use of herbicides "did not constitute genocide as defined by either the [Implementation Act] or the Genocide Convention, particularly with the United States' understanding regarding specific intent." Abagninin's attempts to distinguish *Agent Orange* because the harmful effects of those chemicals were not known at the time assume, but incorrectly, that knowledge is the standard for intent. The key similarity between this case and *Agent Orange* is Abagninin's failure to allege that AMVAC intended to harm him through the use of chemicals.

**[10]** Abagninin's original complaint failed to state an ATS claim for genocide because it failed to allege facts showing violation of a universally-acknowledged norm. Abagninin argues that intent can be inferred from what he has alleged even if measured against a norm requiring specific intent. For example, he points out, his original complaint avers that a Shell employee who led that company's research on DBCP stated with respect to plantation workers: "From what I hear, they could use a little birth control down there." However, no facts are set forth that this statement, assuming it was made as alleged, referred to the Ivory Coast or that it reflected the views of (or could be attributed to) Shell or other manufacturers. Abagninin also submits that his First Amended Complaint alleges that AMVAC acted with intent to prevent births and to destroy villages and their people, but these allegations do not pertain to the genocide claim, which was previously dismissed with prejudice. Regardless, the allegations are conclu-

sory, and thus would be insufficient to overcome a motion to dismiss in any event. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). In sum, being unsupported by factual averments that show anything other than knowledge of a consequence, these allegations fail to make out a claim.

The Rome Statute is not a treaty of the United States, and customary international law defines genocide as requiring specific intent. Furthermore, the United States' government has clearly expressed its understanding regarding specific intent, and we have "no congressional mandate to seek out and define new and debatable violations of the law of nations." *Sosa*, 542 U.S. at 728. Abagninin presents no argument regarding dismissal without leave to amend, and the district court did not abuse its discretion in ordering such dismissal. We therefore affirm the decision of the district court.

### B.    Crimes Against Humanity

Abagninin also appeals the dismissal of the ATS claim for crimes against humanity. As AMVAC does not dispute the point, we will assume, without deciding, that the norm for crimes against humanity is specific, obligatory, and universal. We also assume, because the parties do, that the Rome Statute accurately states the elements of a crime against humanity: commission of any of the enumerated acts when committed as part of a widespread or systematic attack directed against any civilian population, with knowledge of the attack.[5] Rome Statute art. 7.1. An "attack directed against any civilian population" is a course of conduct "pursuant to or in furtherance of a State or organizational policy to commit such attack." *Id.*

---

[5]The enumerated acts include *inter alia*, murder, extermination, enslavement, enforced sterilization, and other "inhumane acts of a similar character intentionally causing great suffering, or serious injury to body or to mental or physical health." Rome Statute art. 7.1(a)-(k).

art. 7.2(a). Abagninin contends that AMVAC is a business organization, and therefore used DBCP pursuant to an "organizational policy." The district court properly concluded that Abagninin failed to allege facts sufficient to constitute State or organization action as required for crimes against humanity.

## 1.   Organizational policy of AMVAC

**[11]** The traditional conception regarding crimes against humanity was that a policy must be present and must be that of a State, as was the case in Nazi Germany. *Prosecutor v. Tadic*, IT-94-1-T, Judgment, ¶ 654 (May 7, 1997). This conception was expanded to include non-State entities which, although not a part of the legitimate government, have de facto control over a defined territory. *Id.* The weakening of the "State action" requirement occurred because unofficial militias loosely affiliated with the State and unaffiliated civilians perpetrated the crimes in Bosnia and Rwanda, respectively. David Luban, *A Theory of Crimes Against Humanity*, 29 Yale J. Int'l L. 85, 95-97 (2004). A common thread throughout these developments is that crimes against humanity are crimes committed through political organization. *Id.* at 97.

**[12]** De facto control thus requires control similar to that of a State or government, such as erecting checkpoints on main roads, increasing examples of command and control, developing civilian structures, and holding a substantial percentage of territory. *Prosecutor v. Limaj*, IT-03-66-T, Judgment, ¶¶ 213-14 (Nov. 30, 2005). Decisions from the International Criminal Tribunal for Rwanda require that actions by a non-State organization be "instigated or directed by a Government or by any organisation or group," as a way to exclude "the situation in which an individual commits an inhumane act . . . in the absence of any encouragement or direction from either a Government or a group or an organisation." *E.g., Prosecutor v.*

*Kayishema & Ruzindana*, ICTR-95-1-T, Judgment, ¶¶ 124-26 (May 21, 1999).

**[13]** The district court correctly concluded that AMVAC is not a State or State-like organization for purposes of international law and crimes against humanity. Abagninin does not argue that he sufficiently alleges de facto control by AMVAC over the territory. Rather, Abagninin argues that because the State action requirement has been relaxed to include non-State organizations, and AMVAC is a business organization (corporation), AMVAC's acts satisfy the State or organization requirement. This reasoning, however, is not supported in customary international law. The modification of the State action requirement, precipitated by the involvement of non-State militias and criminal syndicates, does not justify eliminating the requirement altogether.

### 2. State action by Sodefel

**[14]** Abagninin next contends that the FAC alleged "affirmative action by the government of the Ivory Coast." Just as Abagninin contends that any "organization" is sufficient for crimes against humanity, he contends that any involvement by the State meets the "State action" requirement. However, allegations of "affirmative action by the government of the Ivory Coast" fail to state a claim for crimes against humanity because Abagninin does not allege that the use of DBCP was part of a plan or policy to commit one of the enumerated acts, *i.e.* to sterilize the plantation workers. *Cf.* Rome Statute art. 7.1. Merely purchasing and providing DBCP for use on the plantations does not suffice, and the district court correctly found that the facts as alleged do not support Abagninin's conclusory statement that the use of DBCP was carried out pursuant to a State or organizational policy. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001) ("Conclusory allegations of law, however, are insufficient to defeat a motion to dismiss [for failure to state a claim].").

###### 3. Denial of leave to amend

[15] With respect to the crimes against humanity claim, the district court did not err in denying leave to amend the FAC. Denial of leave to amend is reviewed for abuse of discretion. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990). Leave to amend may be denied if a court determines that "allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Leave to amend may also be denied for repeated failure to cure deficiencies by previous amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Allen*, 911 F.2d at 373.

[16] The district court first dismissed the crimes against humanity claim under Rule 12(c) and granted leave to amend to include allegations of State action. After reaching a tentative ruling granting the motion to dismiss, the district court permitted supplemental briefing as to whether dismissal should be with prejudice, or without prejudice and allow limited discovery regarding the state action requirement. After reviewing Abagninin's proffered discovery, the district court found that the proffered discovery would not establish conduct within the definition of State action. The district court did not abuse its discretion, as allegations of other facts consistent with the challenged pleading could not cure the State action defect, and the previous amendment failed to cure this deficiency.

#### C. Dismissal of Non-Appearing Defendants

Abagninin's final contention on appeal is that the district court erred in dismissing the case as to all defendants, including those that had not appeared in the case and challenged the pleadings. Abagninin contends that this was in error because the court did not give notice of its intention to dismiss and did not permit Abagninin an opportunity to respond in opposition

thereto. *See Lee v. City of Los Angeles*, 250 F.3d 668, 683 n.7 (9th Cir. 2001). This conclusion is not supported by the law or the facts in this case.

**[17]** As a legal matter, we have upheld dismissal with prejudice in favor of a party which had not appeared, on the basis of facts presented by other defendants which had appeared. *Columbia Steel Fabricators, Inc. v. Ahlstrom Recovery*, 44 F.3d 800, 802 (9th Cir. 1995); *Silverton v. Dep't of Treasury*, 644 F.2d 1341, 1345 (9th Cir. 1981) ("A [d]istrict [c]ourt may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants."). The non-served defendants in this case are in a position similar to AMVAC in that all are private actors for which Abagninin cannot allege specific intent required for genocide or State action or de facto control required for crimes against humanity.

**[18]** As a factual matter, Abagninin waived notice as to dismissal of the remaining defendants, and was provided an opportunity to be heard as to dismissal of the non-appearing defendants. At the May 21, 2007 hearing, the district court stated "I presume the plaintiffs' case vis-à-vis Shell will not be any different than with the other defendants so that if I dismiss out the claim based on lack of state action that would apply to Shell as well. . . . In other words, Shell, to my mind, is not going to be any different it would seem to be on a theoretical basis than Dow or Dole." The court concluded that it would "leave that . . . hanging in the air. Notice is waived on this?" Abagninin's counsel responded "[y]es, Your Honor." The district court then permitted supplemental briefing and argument as to whether dismissal should be with or without prejudice. After considering the supplemental information, the court determined that the discovery proffered by Abagninin would not lead to information which could amend the complaint to satisfy the State action requirement, and dismissed with prejudice.

**[19]** The district court did not abuse its discretion in dismissing the remaining defendants. Abagninin waived notice, and was presented an opportunity to respond in opposition. The district court reasonably concluded that further amendment would be futile and that the remaining defendants were in a position similar to that of AMVAC.

## CONCLUSION

In light of the foregoing, the decision of the district court is affirmed in all respects.

AFFIRMED.