IN THE UNITED STATES DISTRICT COURT 
 FOR THE DISTRICT OF MONTANA 
 MISSOULA DIVISION 

DENNIS THORNTON, CV 25-83-M-DWM 
 Plaintiff, 
vs. OPINION 
 and ORDER 
FLATHEAD COUNTY, et al., 
 Defendants. 

 Plaintiff Dennis Thornton, proceeding without counsel, has filed a civil 
rights complaint under 42 U.S.C. § 1983, alleging Defendant Flathead County and 
Individual Defendants Flathead County Attorney Travis Ahner and Deputy County 
Attorneys Ashley Frechette, Michael Noonan, and Angela Rolando (together, 
“Defendants”) violated his constitutional rights and state law in bringing a criminal 
proceeding against him. (Doc. 12.) In 2022, Thornton was prosecuted in Flathead 
County Justice Court for “criminal trespass to property.” (Doc. 12 at J 13.) 
According to Thornton, he was the lawful owner of that property and had been 
since 1993. (Id. J 14.) However, Whitefish Credit Union also claimed ownership

of the property and demanded Thornton be prosecuted. (/d. J 18.) Thornton 
maintains that the Flathead County Sheriff investigated the matter and confirmed 
there was no probable cause for criminal charges, (id. {J 15-17), but he was 
prosecuted anyway, (id. J] 18-20). The matter was dismissed in Thornton’s favor 

on June 15, 2024. Ud. 9 22.) Thornton alleges that Defendants prosecuted him 
“despite actual notice of [his] ownership and the Sheriff's findings.” (Ud. J 20.) 
 Thornton has brought nine causes of action: malicious prosecution (direct 
liability), malicious prosecution (supervisory liability), fabrication of evidence, 
unreasonable seizure of property, civil conspiracy under 42 U.S.C. § 1985(3), false 
official certifications, Monell' liability, negligence, and abuse of process. (See 
generally id.) He seeks $50 million in compensatory damages and additional 
punitive damages. (Ud. ] 63.) Defendants seek to dismiss Thornton’s Second 
Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. 
(Doc. 32.) Thornton opposes. (Doc. 34.) For the reasons stated below, 
Defendants’ motion is granted as to all but two of Thormnton’s claims: his 
Fourteenth Amendment fabrication of evidence claim and his state law negligence 
claim premised on the same conduct. Ironically, Thornton’s filings show that he 
has used artificial intelligence (AJ) to generate false and misleading case citations; 
the remedy for that misconduct is outlined below. 

' Monell v. Dep’t of Soc. Servs. of the City of N.Y., 436 U.S. 658 (1978).

 LEGAL STANDARD 
 To survive a motion to dismiss under Federal Rule of Civil Procedure 
12(b)(6), “a complaint must contain sufficient factual matter, accepted as true, to 
“state a claim to relief that is plausible on its face.’” Ashcroft v. Iqbal, 556 US. 
662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). 
“A claim has facial plausibility when the plaintiff pleads factual content that allows 
the court to draw the reasonable inference that the defendant is liable for the 
misconduct alleged.” Jd. Dismissal is appropriate “where there is no cognizable 
legal theory or an absence of sufficient facts alleged to support a cognizable legal 
theory.” L.A. Lakers, Inc. v. Fed. Ins. Co., 869 F.3d 795, 800 (9th Cir. 2017) 
(internal quotation marks omitted). Pro se complaints are construed liberally, 
Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010), and a court should generally 
permit pro se litigants an opportunity to amend their complaint, see United States 

v. Corinthian Colleges, 655 F.3d 984, 995 (9th Cir. 2011) (“[D]ismissal without 
leave to amend is improper unless it is clear, upon de novo review, that the 
complaint could not be saved by any amendment.” (internal quotation marks 
omitted)). “Courts are not required to grant leave to amend if a complaint lacks 
merit entirely,” Lopez v. Smith, 203 F.3d 1122 , 1129 (9th Cir. 2000), or if there 
has been a “repeated failure to cure deficiencies by previous amendment,” 
Abagninin v. AMVAC Chem. Corp., 545 F.3d 733, 742 (9th Cir. 2008).

 ANALYSIS 
 Defendants argue that Thornton fails to state a claim upon which relief can 
be granted because the Individual Defendants are entitled to prosecutorial 
immunity and Thornton has failed to plausibly allege a Monell claim against 
Flathead County. (See Doc. 33.) Defendants further argue that Thornton’s claims 

are also flawed on the merits. (See Docs. 33, 35.) These arguments are fatal to all 
but two of Thornton’s claims.” Thornton’s Fourteenth Amendment fabrication of 
evidence claim and his state law negligence claim based on the same conduct are 
permitted to proceed. Thornton’s other claims are dismissed with prejudice. 
I. Prosecutorial Immunity 
 “[A] prosecutor enjoys absolute immunity from [§] 1983 suits for damages 
when he acts within the scope of his prosecutorial duties.” Jmbler v. Pachtman, 
424 US. 409, 420 (1976); see also id. at 430-31. This is so even if the prosecutor 
has violated a plaintiffs constitutional rights or acts with malicious intent. Broam 

v. Bogan, 320 F.3d 1023, 1028-29 (9th Cir. 2003); Genzler v. Longanbach, 410 
F.3d 630, 637 (9th Cir. 2005). Courts use a “functional approach” to “decide 

2 Defendants’ initial motion was premised primarily on prosecutorial immunity and 
the absence of a viable Monell claim. (See Doc. 33.) And while that motion 
addressed a few potential merits issues related to Thornton’s individual claims, 
(see id. at 15-20), Defendants expanded the grounds for those arguments in their 
reply, (see Doc. 35). Although Thornton’s request to file a sur-reply was denied, 
(Docs. 36, 37), his putative filing was considered in resolving the present motion.

whether absolute immunity attaches to a particular kind of prosecutorial activity.” 
Van de Kamp v. Goldstein, 555 U.S. 335, 342 (2009); see Burns v. Reed, 500 U.S. 
478, 486 (1991). The focus is therefore on “the nature of the function performed, 
not the identity of the actor who performed it.” Forrester v. White, 484 U.S. 219, 
229 (1988). “To qualify as advocacy, an act must be ‘intimately associated with 
the judicial phase of the criminal process.’” Genzler, 410 F.3d at 637 (quoting 
Imbler, 424 U.S. at 430). Consistently, such immunity has been found “when a 
prosecutor prepares to initiate a judicial proceeding or appears in court to present 
evidence in support of a search warrant application.” Van de Kamp, 555 U.S. at 
343 (internal citations omitted). However, “[p]rosecutors are entitled to qualified 
immunity, rather than absolute immunity, when they perform administrative 
functions, or ‘investigative functions normally performed by a detective or police 
officer.”” Genzler, 410 F.3d at 636 (quoting Kalina v. Fletcher, 522 U.S. 118, 126 
(1997)). “[T]he official seeking absolute immunity bears the burden of showing 
that such immunity is justified for the function in question.” Burns, 500 U.S. at 
486. “[T]he Supreme Court has ‘been quite sparing in its recognition of absolute 
immunity, and has refused to extend it any further than its justification would 
warrant.” Genzler, 410 F.3d at 636-37 (quoting Burns, 500 U.S. at 487). 
 Here, Thornton has alleged that the Individual Defendants pursued criminal 
charges against him without probable cause and executed and relied on false

documentation in doing so. At this stage of the proceeding, Individual Defendants 
have succeeded in showing that most of this conduct is protected by absolute 
immunity. “The analysis of whether prosecutorial acts constitute advocacy or 
police-type investigation work is complicated by the fact that the Supreme Court 
has resisted any attempt to draw a bright-line between the two.” Genzler, 410 F.3d 
at 637. “The question is whether a prosecutor’s investigation is of the type 
normally done by police, in which case prosecutors enjoy only qualified immunity, 
or whether an-investigation is bound up with the judicial process, thus affording 
prosecutors the heightened protection of absolute immunity.” Jd. The specific 
allegations against the Individual Defendants are assessed under this framework. 
 A. Defendant Ahner 
 Thornton alleges that Defendant Ahner, the County Attorney for Flathead 
County, (Doc. 12 at § 8), “[p]ersonally initiated charges” against him “without 
probable cause,” (id. J 24), “[aJuthorized use of false ownership claims in charging 
documents,” (id. § 35), and “directed prosecution knowing no probable cause 
existed,” (id. ] 46). These allegations are part of Thornton’s claims for malicious 
prosecution, fabrication of evidence, and civil conspiracy. The Supreme Court has 
long recognized that the prosecutor’s initiation of a criminal case is “intimately 
associated with the judicial phase of the criminal process” and is therefore a 
“function[] to which the reasons for absolute immunity apply with full force.”

Imbler, 424 U.S. at 430. That is the case even if the prosecutor brings those 
charges in the absence of probable cause. See Buckley v. Fitzsimmons, 509 U.S. 
259, 274 n.5 (1993) (“[A] prosecutor would be entitled to absolute immunity for 
the malicious prosecution of someone whom he lacked probable cause to indict.”). 
This immunity then flows to Thornton’s claims attendant to the charging decision, 
such as his unlawful seizure claim, as he alleges no independent prosecutorial 
misconduct associated with those claims. 
 However, Thornton’s claims regarding the disregard for the Sheriff's 
findings and the fabrication of evidence pose a closer question. In the immunity 
context, there is an important distinction between “[f]ormulating factual criteria 
sufficient to satisfy probable cause from the investigative materials” at issue and 
“personally investigating” the case or attesting to or “exercising judgment going to 
the truth or falsity of the evidence.” Terwillinger v. Reyna, 4 F 4th 270, 280 (Sth 
Cir. 2021) (internal quotation marks omitted). Immunity attaches only in the first 
instance. See Imbler, 424 U.S. at 431 n.33 (recognizing “that the duties of the 
prosecutor in his role as advocate for the State involve actions preliminary to the 
initiation of a prosecution and actions apart from the courtroom”); Broam, 320 
F.3d at 1029 (“In the course of preparing for the initiation of the criminal process 
and for trial, a prosecutor may be required to obtain, review, and evaluate 
evidence.” (internal quotation marks omitted)).

 The Second Amended Complaint does not make clear whether Defendant 
Ahner allegedly fabricated documentation or merely relied on such documentation 
in charging Thornton. Thornton alleges that Defendant Ahner initiated the charges 
against him by “relying on false statements from Sean Frampton and Commander 
Buls,” (id. J 24), and merely “[a]uthorized use of false ownership claims in 
charging documents,” (/d. 9 35). In that instance, Defendant Ahner’s 
characterization of those factual statements and his decision to include certain facts 
in a charging document falls within the category of a “traditional function[] of an 
advocate.” See Kalina, 522 U.S. at 130-31 (describing “drafting . . . [a] 
certification,” “determin[ing] that the evidence was sufficiently strong to justify a 
probable-cause finding,” and “present[ing] . . . the information and the motion to 
the court” as “the work of an advocate . . . integral to the initiation of the 
prosecution”). Indeed, “acts undertaken by a prosecutor in preparing for the 
initiation of judicial proceedings or for trial, and which occur in the course of his 
role as an advocate for the State, are entitled to the protections of absolute 
immunity. Those acts must include the professional evaluation of the evidence 
assembled by the police and appropriate preparation for its presentation at 
trial. ...” Buckley, 509 U.S. at 273. Thus, to the extent Thornton claims that 
Defendant Ahner merely relied on false information or documentation in charging 
him, that claim is foreclosed by absolute immunity,

 But Thornton also alleges that the Individual Defendants “created or 
approved false documents” “under [Defendant] Ahner’s direct supervision and 
instruction,” (Doc. 12 at { 21), and that Defendants Ahner, Frechette, and Noonan 
“knowingly executed and used false property ownership certifications to support 
the prosecution,” (id. | 49). Considered together, these allegations raise a specter 
of “investigative” conduct prior to and independent of the charging decision and 
subsequent prosecution. Buckley, 509 U.S. at 273-74. Read as a whole, the 
Second Amended Complaint could be liberally construed to allege that Defendant 
Ahner ignored the Sheriff’s findings and then brought charges based on an 
independent investigation and falsified evidence. Such conduct is not protected by 
absolute immunity. See Milstein v. Cooley, 257 F.3d 1004, 1011 (9th Cir. 2001) 
(explaining that because it is more akin to police work than advocacy, fabricating 
evidence by knowingly obtaining false statements prior to charging a defendant is 

not protected by absolute immunity); Genzler, 410 F.3d at 641 (explaining that 
“the process of acquiring or manufacturing evidence during [the] performance of 
policy-type investigative work” is not protected by absolute immunity). 
 Liberally construing the facts alleged in the Second Amended Complaint as 

true, Defendant Ahner may have been engaged in police-type investigative work, 
not advocacy, when he marshaled evidence against Thornton. At this stage of the 
proceedings, it is not clear that Defendant Ahner is immune for that conduct. 

 oO 

 B. Defendant Frechette 
 Thornton alleges that “Defendant Frechette [d]rafted and/or signed the 
probable cause affidavit omitting proof of [Thornton]’s ownership and the 
Sheriffs findings,” (id. | 25), “[o]mitted exculpatory facts from affidavits and 
court filings,” (id. { 36), and “[fliled an affidavit omitting exculpatory evidence,” 
(id. § 46). As discussed above, a prosecutor is immune for actions taken in 
“preparation” of “the initiation of the criminal process.” Imbler, 424 U.S. at 431 
n.33. Additionally, “[a] prosecutor is absolutely immune from liability for failure 
to investigate the accusations against a defendant before filing charges,” Broam, 
320 F.3d at 1029, and for the “decision not to preserve or turn over exculpatory 
material before trial, during trial, or after conviction,” id. at 1030 (collecting 
cases). Thus, Defendant Frechette is immune from liability for the specific 
conduct alleged above. Nevertheless, Thornton’s general allegations that the 
Individual Defendants, including Defendant Frechette, “created or approved false 
documents,” (Doc. 12 at | 21), and “knowingly executed and used false property 
ownership certifications to support the prosecution,” (id. § 49), prevents a finding 
of immunity as to conduct that occurred prior to the filing of charges. Once again, 
factually it is unclear at this pleadings stage whether Defendant Frechette engaged 
in police-type investigative activity prior to the leveling of charges. 
 C. Defendant Noonan 

 nh 

 Thornton alleges that Defendant Noonan “[r]eviewed exculpatory records 
and the Sheriff’s report [d]espite not having a signed complaint but took no action 
to halt prosecution,” (id. J 26), “[a]pproved filings despite knowledge they 
contained fabricated information,” (id. § 37), and “participated in malicious 
prosecution despite contrary evidence,” (id. □ 46). As discussed above, 
prosecutorial immunity extends the “professional evaluation of the evidence 
assembled by the police and appropriate preparation for its presentation at trial,” 
Buckley, 509 U.S. at 273, as well as to the discretion to not disclose exculpatory 
records and to maintain a prosecution despite exculpatory evidence, see Broam, 
320 F.3d at 1029-30. Thus, Defendant Noonan is immune from liability for the 
conduct outlined above. But, akin to Defendants Ahner and Frechette, Thornton’s 
bare general allegations that the Individual Defendants, including Defendant 
Noonan, “created or approved false documents,” (Doc. 12 at | 21), and “knowingly 
executed and used false property ownership certifications to support the 
prosecution,” (id. { 49), prevents a preliminary finding of immunity as to potential 
investigative activities. 
 D. Defendant Rolando 
 Thornton alleges that Defendant Rolando dismissed the charges against 
Thornton following a two-day investigation, (id. | 27), and “[d]id not fabricate 
evidence or permit false certifications,” (id. J 38), but “participated in malicious 

 11 

prosecution despite contrary evidence,” (id. § 46). The third allegation falls 
squarely within protected advocacy activity for which Defendant Rolando is 
immune, and the second allegation explicitly states that Defendant Rolando did not 
actually engage in the misconduct alleged. And while the allegation of 
investigative action likely falls outside the scope of absolute prosecutorial 
immunity, see Genzler, 410 F.3d at 639, there is no harm associated with it. To the 
contrary, Thornton alleges that Defendant Rolando’s investigation led to the 
dismissal of the charges against him, (Doc. 12 at § 27), and does not allege that 
Defendant Rolando “created or approved false documents,” (id. § 21). 
Accordingly, Defendant Rolando is dismissed from this action entirely. 
E. Conclusion 
 Based on the foregoing, Defendants have shown that most of the alleged 
misconduct falls within the protections of absolute immunity. More specifically, 
the Individual Defendants’ filing of criminal charges, failure to disclose 
exculpatory evidence related to those charges, and maintenance of the prosecution 
in the absence of probable cause qualifies as advocacy and is therefore protected 
by absolute immunity. However, the Second Amended Complaint leaves open the 
possibility that Defendants Ahner, Frechette, and Noonan engaged in police-like 
investigative activity or the fabrication of evidence. Absolute immunity does not 
extend to such conduct; but it may be insulated from liability by qualified 

 19 

immunity or a more complete record. 
 Ultimately, of Thornton’s federal claims against the Individual Defendants, 
only his alleged Fourteenth Amendment fabrication of evidence claim (Count II) 
and his alleged false official certifications claim (Count VI) survive the 
prosecutorial immunity analysis. And because immunity makes amendment of the 
dismissed claims futile, that dismissal is with prejudice. 
II. Federal Claims 
 Thornton has brought nine causes of action against Defendants, including 
seven federal claims and two state law claims. Most of his federal claims are 
barred by prosecutorial immunity as discussed above. Those claims include 
malicious prosecution (Counts I and II), Fourth Amendment seizure (Count IV), 
and civil conspiracy (Count V).* His claim for false official certifications under 18 
U.S.C. § 1018 (Count VI) and his Monell claim against the County (Count VII) fail 

on the merits. As a result, of Thornton’s federal claims, only his Fourteenth 
Amendment fabrication of evidence claim (Count III) survives the present motion. 

3 These claims would also be subject to dismissal on the merits. Thornton has not 
alleged that he was seized, foreclosing his Fourth Amendment malicious 
prosecution claim under § 1983. See Chiaverini v. City of Napolean, Ohio, 602 
U.S. 556, 558 (2024). Nor has he shown the government meaningfully interfered 
with his possessory interest in the real property at issue. See--Soldal v. Cook 
Cnty., Ill., 506 U.S. 56, 61 (1992). Finally, Thornton has alleged no racial or 
otherwise class-based invidious discriminatory animus behind Defendants’ 
conduct. Griffin v. Breckenridge, 403 U.S. 88, 102 (1971). 
 12 

 A. Fabrication Claim 
 “The Fourteenth Amendment prohibits the deliberate fabrication of evidence 
by a state official.” Spencer v. Peters, 857 F.3d 789, 793 (9th Cir. 2017). “To 
prevail on a § 1983 claim of deliberate fabrication, a plaintiff must prove that 
(1) the defendant official deliberately fabricated evidence and (2) the deliberate 
fabrication caused the plaintiff's deprivation of liberty.” Jd. at 798. “To establish 
the second element of causation, the plaintiff must show that (a) the act was the 

cause in fact of the deprivation of liberty, meaning that the injury would not have 
occurred in the absence of the conduct; and (b) the act was the proximate cause or 
legal cause of the injury, meaning that the injury is of a type that a reasonable 

person would likely see as a result of the conduct in question.” Jd. (internal 
quotation marks omitted). Defendants argue that Thornton has failed to state a 
viable fabrication claim because “damage to reputation, standing alone, cannot 
state a claim for relief under § 1983.” (Doc. 35 at 7.) Defendants miss the point. 
Damage to reputation aside, under § 1983, a “plaintiff need not be convicted on the 
basis of the fabricated evidence to have suffered a deprivation of liberty—being 
criminally charged is enough.” Caldwell v. City & Cnty. of San Francisco, 889 
F.3d 1105, 1115 (9th Cir. 2018). “[T]here is a clearly established constitutional 
due process right not to be subjected to criminal charges on the basis of false 

 1A 

evidence that was deliberately fabricated by the government.” Devereaux v. 
Abbey, 263 F.3d 1070, 1074-75 (9th Cir. 2001). 
 Defendants further argue that Thornton fails to allege facts showing that two 
of the Individual Defendants, Noonan and Rolando, fabricated any evidence. As 
discussed above, Defendants are correct regarding Defendant Rolando. As it 
relates to Defendant Noonan, however, Thornton specifically alleges that 
“Noonan ..., under Ahner’s direct supervision and instruction, created or 
approved false documents.” (Doc. 12 at J 21.) 
 Based on the foregoing, Defendants’ motion to dismiss is denied as to 
Thornton’s fabrication of evidence claim against Individual Defendants Ahner, 
Frechette, and Noonan. 
 B. False Certification — 18 U.S.C. § 1018 
 Thornton alleges that “Defendants knowingly executed and used false 
property ownership certifications to support the prosecution” in violation of 18 
U.S.C. § 1018, which criminalizes false official certificates or writings. (Doc. 12 
at 49.) Criminal statutes rarely create private causes of action. See Cent. Bank of 
Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 190 (1994) 
(“We have been quite reluctant to infer a private right of action from a criminal 
prohibition alone.”). There is no statutory basis for inferring that a civil cause of 
action exists for Defendants’ alleged violation of § 1018. See Gonzaga Univ. v. 

 1c 

Doe, 536 U.S. 273, 285 (2002) (reaffirming that § 1983 provides a mechanism for 
enforcing individual rights secured by the constitution or laws of the United 
States). This claim is dismissed without leave to amend. 
 C. Monell Claim 
 “A government entity may not be held liable under 42 U.S.C. § 1983, unless 

a policy, practice, or custom of the entity can be shown to be a moving force 
behind a violation of constitutional rights.” Dougherty v. City of Covina, 654 F.3d 
892, 900 (9th Cir. 2011) (citing Monell v. Dep’t of Soc. Servs. of the City of New 
York, 436 U.S. 659, 694 (1978)). The Ninth Circuit recognizes four situations 
when local government conduct may be considered a policy: “(1) an official 
policy; (2) a pervasive custom or practice; (3) a failure to train, supervise, or 
discipline; or (4) a decision or act by a final policymaker.” Horton by Horton v. 
City of Santa Maria, 915 F.3d 592, 602-03 (9th Cir. 2019). A local government 
“may not, however, be sued under a respondeat superior theory.” Id. And the 
“official policy must be the moving force of the constitutional violation.” Polk 
Cnty. v. Dodson, 454 U.S. 312, 326 (1981) (internal quotation marks omitted). 
 Here, Thornton alleges that “Flathead County had policies/customs that 
allowed prosecutions without probable cause and with disregard for exculpatory 
law enforcement findings,” (Doc. 12 at § 52), and that “[s]uch policies/customs 
were the moving force behind the violations,” (id. 53). Defendants persuasively 

 16 

argue that this claim is woefully inadequate. At the pleadings stage, a plaintiff's 
Monell claim “may not simply recite the elements of a cause of action, but must 
contain sufficient allegations of underlying facts” to provide the opposing party 
with fair notice to defend itself. AF ex rel. Hernandez v. Cnty. of Tulare, 666 F.3d 
631, 637 (9th Cir. 2012) (internal quotation marks omitted). Thornton’s 
conclusory allegations fall far short of that requirement. As a result, dismissal is 
appropriate. The remaining discussion therefore speaks to why Thornton will not 
be given leave to amend. 
 The Second Amended Complaint does not identify by which means 
Thornton believes his prosecution amounts to a policy, custom, or practice. 
However, in his briefing, Thornton appears to argue that the misconduct was by a 
final policy-making official and that his mere filing of such charges made it policy 
within Flathead County. Neither argument states a plausible claim for Monell 
liability. First, Thornton argues that Defendant Ahner, as County Attorney, was a 
final policy maker that “personally authorized, directed, and ratified the challenged 
conduct.” (Doc. 34 at 10.) “To hold a local government liable for an official’s 
conduct [under § 1983], a plaintiff must first establish that the official (1) had final 
policymaking authority concerning the action alleged to have caused the particular 
constitutional or statutory violation at issue and (2) was the policymaker for the 
local governing body for the purposes of the particular act.” Weiner v. San Diego 

 17 

Cnty., 210 F.3d 1025, 1028 (9th Cir. 2000) (internal quotation marks omitted). 
“[W]hether a particular official has final policy-making authority is a question of 
state law.” Jett v. Dallas Independ. Sch. Dist., 491 U.S. 701, 737 (1989) (internal 
quotation marks and emphasis omitted). 
 Although the Montana Attorney General has the obligation “to exercise 
supervisory powers over county attorneys in all matters pertaining to the duties of 
their offices,” Mont. Code Ann. § 2—15-501(5), Montana law vests county 
attorneys with broad discretion to determine whether to prosecute an offender 
and/or determine what offense to charge, see Mont. Code Ann. § 7-4—2716(1); 
State v. Meeks, 176 P.3d 1073, 1075 (Mont. 2008). Defendants do not present any 
legal authority for the proposition that Defendant Ahner, as County Attorney, did 
not have final policymaking authority for his conduct as the prosecuting attorney in 
this case. Cf Mont. Code Ann. § 7-4—2716(2) (explaining that when ordered by 
the attorney general, county attorneys must “promptly institute and diligently 
prosecute ... in the name of the state of Montana any criminal . . . proceeding.”). 
 A more nuanced question, however, is whether Defendant Ahner was acting 
as a policymaker for the state or the county in this context. This inquiry is 
dispositive because “if the relevant officials were working on behalf of the State, 
then any practice or custom was a State practice or custom, not a municipal 

 1Q 

practice or custom.” Taylor v. Cnty. of Pima, 913 F.3d 930, 937 (9th Cir. 2019) 
(Graber, J., concurring) (citing McMillian v. Monroe Cnty., 520 U.S. 781 (1997)). 
The determination of whether an official is a state or local policymaker “is made 

on a function-by-function approach by analyzing under state law the organizational 
structure and control over the [relevant official].” Goldstein v. City of Long Beach, 
715 F.3d 750, 753 (9th Cir. 2013). An officer may act for the state in one capacity 
and for the county in another. Weiner, 210 F.3d at 1031 (“Although a California 
district attorney is a state officer when deciding whether to prosecute an individual, 
this is not to say that district attorneys in California are always state officers for all 
purposes.”). Under Montana law, while county attorneys are listed as “county 
officers,” Mont. Code Ann. § 7—4—2203(1)(a), their prosecutorial actions are taken 

on behalf of the state. Indeed, county attorneys are obligated to “attend the district 
court and conduct, on behalf of the state, all prosecutions for public offenses and 

represent the state in all matters and proceedings to which it is a party or in which 
it may be beneficially interested[.]” Mont. Code Ann. § 7-4—2716(1) (emphasis 
added). This is distinguishable from other actions taken by Montana county 
attorneys, such as “actions to recover money,” which may be taken on behalf of 
“the state or the county.” Mont. Code Ann. § 7-4-2713 (emphasis added). This 

can also be distinguished from other, non-prosecutorial roles taken by Montana 
county attorneys, such as acting as “the legal adviser [for] the board of county 

commissioners” or other local entities. See Mont. Code Ann. § 7-4-2711. 
Ultimately, in the present case, Defendant Ahner was acting as a state official in 
prosecuting Thornton. His § 1983 claim against the County based on Defendant 
Ahner’s policymaking authority therefore fails. “The County was not the actor; the 
state was.” Weiner, 210 F.3d at 1031. 
 As to Thornton’s second point, the mere fact that his prosecution was 
allowed to proceed does not make it policy. The very foundation of Monell is that 

a plaintiff cannot establish municipal policy by fiat. “Absent a formal 
governmental policy, [a plaintiff] must show a longstanding practice or custom 
which constitutes the standard operating procedure of the local government entity.” 
Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) (internal quotation marks 
omitted). “The custom must be so ‘persistent and widespread’ that it constitutes a 
‘permanent and well settled city policy.’” Jd. (quoting Monell, 436 U.S. at 691). 
“(G]enerally, a single instance of unlawful conduct is insufficient to state a claim 
for municipal liability under section [§] 1983.” Benavidez v. Cnty. of San Diego, 
993 F.3d 1134, 1154 (9th Cir. 2021). “Single acts may trigger municipal liability 
where fault and causation were clearly traceable to a municipality’s legislative 
body or some other authorized decisionmaker.” Jd. (internal quotation marks 
omitted). No such facts exist here. 

 90 

 Based on the foregoing, Defendants’ motion to dismiss is granted as to 
Thornton’s Monell claim. 
Il. State Law Claims 
 Having determined that one § 1983 claim survives at this stage (fabrication 
of evidence), it is appropriate to consider Thornton’s pendant state law claims. 
With limited exception, these claims are dismissed with prejudice. 
 A. Negligence (Count 8) 
 Thornton alleges that the Individual Defendants were negligent by: 
 a. Failing to properly examine public records evidencing Plaintiff's 
 ownership and lawful possession of the property; 
 b. Authorizing and continuing criminal prosecution against Plaintiff 
 without probable cause, despite being presented with exculpatory 
 findings by law enforcement; 
 c. Preparing, approving, or promulgating false or misleading 
 documents, and omitting exculpatory information in official 
 proceedings; 
 d. Failing to comply with clear professional standards and duties 
 imposed by law for government officials and law enforcement; [and] 
 e. Supervising or ratifying actions that foreseeably resulted in injury to 
 Plaintiff through neglect of established procedures and disregard for 
 Plaintiff's rights. 
(Doc. 12 at ] 56.) As was the case with Thornton’s federal claims, Individual 
Defendants are absolutely immune from liability for most of this alleged 
misconduct. Montana, which also applies a functional test in the prosecutorial 

 “1 

immunity context, see Renenger v. State, 426 P.3d 559, 564 (Mont. 2018), 
recognizes that “[f]iling and maintaining criminal charges are among the many 
duties of a prosecutor and when a prosecutor acts within the scope of these duties, 
that prosecutor is absolutely immune from civil liability, regardless of negligence 
or lack of probable cause,” Rosenthal v. Cnty. of Madison, 170 P.3d 493, 499 
(Mont. 2007). That is the case even if the Individual Defendants had “improper 
motives,” id., or the prosecutor omitted exculpatory information from the charging 
documents, see Renenger, 426 P.3d at 564 (“[A] county attorney’s selection of 
particular facts to include in a petition . . . [is a] traditional prosecutorial function[] 
protected by absolute immunity.”). However, the Montana Supreme Court has 
also distinguished between evaluating evidence assembled by law enforcement, 
which would entitle the prosecutor to absolute immunity, see id., and engaging in 
investigative or administrative activities, which would entitle the prosecutor to 
only qualified immunity, Reinlasoder y. City of Billings, 455 P.3d 477, at *1 
(Mont. 2020). Consistently, only Thornton’s negligence allegation premised on 
the preparation of false documents, (see Doc. 12 at { 56(d)), can proceed at this 
stage. The remainder of this claim is dismissed without leave to amend. 
 B. Abuse of Process 
 Thornton alleges that the Individual Defendants abused process by 
prosecuting him with criminal trespass to harass, coerce, and intimidate him and to 

 49 

interfere with his “lawful property rights.” (Doc. 12 at J] 60, 66.) Because this 
claim is based entirely on Thornton’s criminal charges and prosecution, it is barred 
by prosecutorial immunity. See Rupnow v. Mont. State Auditor & Comm’r of Ins., 
542 P.3d 384, 391 (Mont. 2024) (“His complaint seeks civil liability from the State 
and its agents for traditional prosecutorial functions—bringing and pursuing 
criminal charges.”) 
IV. False or Misleading Case Citations 
 In their reply, Defendants highlight Thornton’s citation to a nonexistent 

case: Younger v. City of Seattle, 70 F.4th 1099, 1107 (9th Cir. 2023). (See Doc. 35 
at 9 (referencing Doc. 34 at 9).) As explained by Defendants, the citation “70 
F.4th 1099” leads to an unrelated Eighth Circuit case, and there does not appear to 
be a Ninth Circuit case with that title. While Thornton does not respond directly to 
this imputation, he subsequently filed a “Verification of Case Citations” that lists 
several cases with a note that they have been “verified as legit.” (Doc. 36-2.) This 
verification corresponds to his sur-reply, however, and does not address Younger. 
 Attorneys that have submitted briefs containing Al-generated or fabricated 

case citations may be found in violation of Rule 11(b) of the Federal Rules of Civil 
Procedure, which requires that legal contentions be “warranted by existing law or 
by a nonfrivolous argument for extending, modifying, or reversing existing law.” 
Fed. R. Civ. P. 11(b); see Mavy v. Comm’n of Soc. Security Admin., 2025 WL 

 “4 

2355222, at *7 (D. Ariz. Aug. 14, 2025). Under Rule 11, a signature on a filing 
“certifies to the court that the signer has read the document, has conducted a 
reasonable inquiry into the facts and the law and is satisfied that the document is 
well grounded in both, and is acting without any improper motive.” Bus. Guides, 
Inc. v. Chromatic Comme’ns. Enters., Inc., 498 U.S. 533, 542 (1991). 
Consistently, “any party who signs a pleading, motion, or a paper” has “an 
affirmative duty to conduct a reasonable inquiry into the facts and the law before 
filing.” Jd. 551. “[T]he applicable standard is one of reasonableness under the 
circumstances.” Jd. If Rule 11 has been violated, sanctions may be imposed. Fed. 
R. Civ. P. 11(c). “Although Rule 11 applies to pro se plaintiffs, the court must 
take into account a plaintiffs pro se status when it determines whether the filing 
was reasonable.” Warren v. Guelker, 29 F.3d 1386; 1390 (9th Cir. 1994) (internal 
quotation marks omitted). Thornton is no ordinary pro se litigant. He has vast 
experience with pro se work and has been designated a vexatious litigant by the 
United States Bankruptcy Court and the state courts of Montana. 
 Here, while Defendants have identified only one false case citation used by 
Thornton, Younger v. City of Seattle, his briefing contains several more examples. 
Although the Younger citation is concerning, the underlying legal proposition—the 
initiation of criminal process without probable cause can result in a Fourth 
Amendment violation—is sound. See Chiaverini v. City of Napolean, Ohio, 602 

 FA 

U.S. 556, 563 (2024) (“[I]f an invalid charge . . . causes a detention to either start 

or to continue, then the Fourth Amendment is violated.”). However, Thornton 
cites at least two more nonexistent cases in his sur-reply. (See Doc. 36-1 at 4 
(referencing United States v. Craner, 652 F. App’x 560, 562 (9th Cir. 2016),* and 
United States v. Smith, 629 F.3d 1082, 1084 (9th Cir. 2011)).) Thornton cites these 

cases to support the proposition that a citation mandating a court appearance by 
itself constitutes a significant restraint on liberty sufficient to qualify as a “seizure” 
under the Fourth Amendment. (See id.) This legal proposition is not sound. See 
Karam v. City of Burbank, 352 F.3d 1188, 1193-94 (9th Cir. 2003) (explicitly 
rejecting the argument that a compelled court appearance qualifies as a Fourth 
Amendment “seizure”). And while a subsequently cited case, Odd v. Malone, 538 
F.3d 202 (3d Cir. 2008), exists, it does not contain the language quoted by 
Thornton and it was not authored by the judge referenced. (See Doc. 36-1 at 5.) 
As the Court performed only a limited survey of his citations, there may be more 
false cases or fabricated citations in Thornton’s briefing. 
 At this early stage in the litigation, a remedy short of Rule 11 sanctions is 
appropriate. To be sure, the Court has serious concerns regarding Thornton’s 

4 Thornton may have meant to refer to United States v. Craner, 652 F.2d 23 (9th 
Cir. 1981). (See Doc. 36-2 at | (listing this citation in his “Verification of Case 
Citations”).) However, that case discusses the right to a jury in “serious” versus 
“petty” crimes; it does not address the Fourth Amendment.

conduct as this is neither his first federal court case nor the first time he has 

falsified authority. To ensure.that the information provided to the Court is 
authentic and accurate, Thornton is required to conventionally file a hard copy of 
the complete document for every source of authority cited in any of his filings, 
including all cases and statutes. If this remedy is insufficient to prevent further 

misconduct, a hearing will be set and Thornton will be given the opportunity to 
respond before sanctions are levied. 
 CONCLUSION 

 Based on the foregoing, IT IS ORDERED that: 
 (1) Defendants' motion to dismiss, (Doc. 32), is GRANTED in PART and 
DENIED in PART. The motion is DENIED as to Thornton's Fourteenth 
Amendment fabrication of evidence claim ( Count III) and his state law negligence 

claim (Count VIII) premised on that same conduct insofar as those claims are 
brought against Individual Defendants Ahner, Frechette, and Noonan. The 
motion is GRANTED in all other respects. Defendant Rolando, Flathead County 

and all Thornton's other claims ( Counts I, II, IV, V, VI, VII, IX, and part of VIII) 
are dismissed with prejudice. A trial schedule will be set by separate order. 
 (2) On or before February 6, 2026, Thornton must conventionally file a hard
copy of the complete source documents for every legal citation in Docs. 34 and 36-

1. The failure to do so, or an incomplete response, may result in Rule 11 
proceedings, as discussed above. Furthermore, for all future filings, Thornton must 
conventionally file a hard copy of the complete source documents for all cited 
authority. The failure to do so may result in his filing being struck from the record 
with no further notice to if 
 DATED this Wd y of January, 2026. 

 Donald W. Molloy, District Judge 
 United States District Court 

 "yy